IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                      No. CR 05-1849 JH

DANA JARVIS, et al.,

      Defendants.

## DEFENDANTS' JOINT MOTION TO
## COMPEL DISCOVERY RELATED TO
## THE INTERCEPTION OF ELECTRONIC COMMUNICATIONS

The Defendants who are represented by court-appointed counsel, by and through undersigned counsel, hereby jointly request this Honorable Court to order the Government to produce documents and materials necessary to determination whether or not the government has complied with the necessity and minimization requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510-22. These records are necessary for the vindication of the Defendants' fundamental constitutional right to freedom from unreasonable searches and seizures as protected by the Fourth Amendment. Allowing the government to continue to conceal important documents relating to the legality of the wiretap in this case thwarts Congress's purpose in enacting Title III, prevents an

independent determination by this Court of the legality of the government's conduct of the wiretap in this case, and very will likely lead to unnecessary delay in the course of these proceedings, wasting scarce judicial resources.

1.    **The Defendants formally requested that the Government produce documents and materials directly relevant to the issue of the Government's violation of Title III and the Fourth Amendment.**

On May 8, 2006, the Defendants formally requested the Government to produce these documents. *See* Attachment A. Each of the seventeen types of documents specifically identified in the Defendants' formal written discovery request is material to (1) the question whether the government showed the necessity for a wide-ranging and intrusive wiretap, and/or (2) the question whether the government complied with mandatory Title III restrictions regarding minimization of the interception of private conversations not related to the investigation. Defendants intend to bring a motion to suppress evidence obtained as a result of the wiretap on grounds that there was no necessity for the wiretap in this case and the government violated minimization requirements.

**A.** *The seventeen specific types of documents requested and the particular suppression issues to which they are material.*

First, the Defendants requested that the Government produce "[r]eports, sometimes known as 'ten-day reports,' pertaining to the interception of electronic communications in this case." Exhibit A at 1, ¶ 1. This is material to determining whether or not the government had a need to perpetuate the invasive interception of private telephone conversations.

Second, the Defendants requested that the Government produce "[c]hain of custody records for the original recordings of the electronic communications intercepted and recorded during the course of electronic surveillance in this case." Exhibit A at 1, ¶ 2. This is material to determining whether or not the government complied with Title III's specific requirements for the handling, dissemination, and preservation of the intercepted communications.

Third, the Defendants requested that the Government produce "Drug Enforcement Administration and/or task force policy regarding approval of a request from an appropriate judicial branch official for an order authorizing the interception of electronic communications; DEA and/or task force policy regarding the monitoring of electronic communications; and names and titles of individuals

in the chain of command regarding the approval of a request for authorization to intercept electronic communications pertaining to this case." Exhibit A at 1-2, ¶ 3. These records are material to determining whether or not the government violated its own policies and Title III when it sought and obtained a court order authorizing the wiretap.

Fourth, the Defendants requested that the government produce "[a]ll pen register records and printouts pertaining to this investigation, any of the defendants in this case, or any factual allegation made or individual referred to in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 4. The pen registers and related documents and materials are material to determining whether or not the government had a legitimate investigative need for the intrusive step of intercepting a vast number of private telephone conversations.

Fifth, the Defendants requested that the Government produce "[n]et worth investigation records pertaining to this investigation, any of the defendants in this case, or any factual allegation made or individual referred to in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 5. These net worth records are material to determining whether or not there was any necessity for this wiretap.

4

Sixth, the Defendants requested that the government produce "[r]eports regarding any aspect of this case prepared by any financial analyst, accountant, investigator or other individual consulted by DEA Special Agent Richard L. Stark or other law enforcement officials in the course of this investigation." Exhibit A at 2, ¶ 6. These financial records are material to determining the need for the wiretap.

Seventh, the Defendants requested that the Government produce "[a]udiotapes or similar records of any physical surveillance or consensual monitoring (wires) pertaining to this investigation, any of the defendants in this case, or any factual allegation in the affidavits of DEA Special Agent Richard L Stark." Exhibit A at 2, ¶ **7**. These surveillance records pertain directly to the question whether there was any legitimate investigative need for the Government to intercept private telephone communications.

Eighth, the Defendants requested that the Government produce "[c]ellular or long-distance toll records, including records of the duration of telephone calls, or anything similar, such as those referenced in ¶ 70 of the first affidavit of DEA Special Agent Richard L. Stark or pertaining to this investigation, any of the defendants in this case, or any factual allegation in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 8. These telephone records pertain

directly to the issue whether there was any legitimate investigative need for the government to intercept private telephone communications.

Ninth, the Defendants requested that the government produce "[a]ny state or federal grand jury transcripts pertaining to this investigation, any of the defendants in this case, or any individual named in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 9. These transcripts are material to the question of necessity for the wiretap.

Tenth, the Defendants requested that the government produce "[m]emoranda or any record in an electronic or paper form, not to exclude law enforcement original notes, regarding any payments, vetting, polygraph records, drug testing, agreements, and any other information pertaining to reliability or lack of reliability of confidential informants, confidential sources, cooperating witnesses, or any other sources of information by any description, pertaining to this investigation, any of the defendants in this case, or any factual allegation made or individual referred to in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 10. These records regarding informants and similar sources of information are material to the question of necessity for the wiretap.

Eleventh, the Defendants requested that the government produce "[r]ecords of any other wiretap or interception of electronic communications that were used as a basis for any factual allegation in the affidavits of DEA Special Agent Richard L. Stark, or are pertinent to any aspect of this investigation or any of the defendants in this case." Exhibit A at 2, ¶ 11. These records regarding any other wiretaps are material to the question of necessity for the wiretap.

Twelfth, the Defendants requested that the government produce "[r]ecords pertaining to the detention, imprisonment, incarceration, probation, supervision, or parole of any individual referred to in the affidavits of DEA Special Agent Richard L. Stark." Exhibit A at 2, ¶ 12. These records regarding these individuals are material to the question of the necessity for the wiretap.

Thirteenth, the Defendants requested that the government produce "[l]ogs, reports, records, original notes, or any other record created by any method pertaining to physical surveillance of any individual named in the affidavits of DEA Special Agent Richard L. Stark. The materials sought in this request include records created by any method that may be used to preserve evidence gathered during or as a result of physical surveillance or that may be used to refresh law enforcement recollection." Exhibit A at 3, ¶ 13. These physical surveillance records are material

to the question of necessity for the wiretap.

Fourteenth, the Defendants requested that the government produce "[a]ny record created by any method, including sign-in and sign-out logs, or similar records, for the wiretap facility or room, indicating the dates and times that each individual involved in the interception of electronic communications in this case entered and exited the wiretap facility or room." Exhibit A at 3, ¶ 14. These records are material to determining whether or not the monitoring agents complied with Title III requirements with respect to minimization.

Fifteenth, the Defendants requested that the government produce "[a]ny record created by any method, such as minimization logs or similar records, regarding the minimization of interception of electronic communications that are unrelated to this investigation." Exhibit A at 3, ¶ 15. These records are material to determining whether or not the monitoring agents complied with Title III requirements with respect to minimization.

Sixteenth, the Defendants requested that the government produce "[a]ny record created by any method regarding the minimization training received by the monitors of the interception of electronic surveillance in this case. The records sought in this request include minimization instructions, minimization training

manuals, materials used in minimization instruction or training, sign-in sheets or similar records pertaining to attendance at the training sessions, and training records. The records sought in this request also include any record created by any method memorializing where and when each individual conducting monitoring in this wiretap received training, such as, but not limited to a sign-in sheet for such training. The records sought in this request also include a copy of any item posted at the monitoring facility or room which apprises the monitors of the minimization procedures, requirements or guidelines." Exhibit A at 3, ¶ 16. These records are material to determining whether or not the monitoring agents complied with Title III requirements with respect to minimization.

Seventeenth and finally, the Defendants requested that the government produce "[a]ny reports by prosecuting officials in the United States Attorney's Office for the District of New Mexico to the Administrative Office of the United States Courts, that include information pertaining to the applications for interception of wire communications in this case." Exhibit A at 3, ¶ 17. These reports are material to determining whether or not the government violated Title III requirements in the process of obtaining and executing this wiretap.

B.    *The legal basis for production of the documents and materials.*

In the formal written request to the government, the Defendants cited as grounds for the production of these documents, Paragraph 2(C) of the discovery Order entered on August 29, 2005, by the Honorable Alan C. Torgerson, United States Magistrate Judge, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510-22, the United States Constitution, and other applicable laws.  *See* Exhibit A at 1.

## 2.    The Government has refused to disclose records and documents that are necessary for a determination by the Court whether the government violated Title III or the Fourth Amendment.

The government largely rebuffed the Defendants' request, refusing to disclose virtually all of the types of documents identified in the Defendants' May 8, 2006 letter.  *See* Exhibit B at 1-3.  The government claimed that the documents requested are "not subject to" or are "exempt from" disclosure under Rule 16, *see* Ex. B at 2, ¶¶ 3, 4, 7, 8, 10; Ex. B at 2, ¶¶ 12, 13, 14, 15 and 17, that disclosure of the documents is "not mandate[d]" by Rule 16, *see* Ex. B at 1, ¶ 1, that the government does not intend to introduce testimony regarding the requested material at trial, *see* Ex. B at  ¶¶ 7, 13, and other miscellaneous grounds, *see, e.g.,* Ex. B at ¶¶ 6, 7, 9, 10 and 12.  With respect to a relative handful of documents, the government stated that it had

disclosed some documents and would disclose other documents in the future. *See* Ex. B at ¶¶ 2, 5, 7, 12.

In essence, the government's position is that the Defendants are not entitled to the disclosure of any additional documents related to the necessity for the wiretap or the minimization of unrelated conversations during the wiretap. The government attempts to erect a shield behind which it may protect from disclosure to the court and to counsel evidence that is material to determining whether it has complied with the requirements of Title III and the Fourth Amendment. The government's position is untenable. It may not suppress evidence that is material to determining whether or not it has violated Title III or the Fourth Amendment.

**3.     There is no legal basis for the government's refusal to disclose material, relevant records and documents pertaining to the necessity and minimization requirements of Title III and the Fourth Amendment.**

The defendants requested documents, records, and materials relevant to two issues: the necessity for a wiretap, and minimization requirements. The disclosure of these documents is necessary for defendants to meet their burden in a motion to suppress and a hearing on the motion to suppress. The defendants need access to these documents and materials in order to demonstrate that the government has

11

failed to show the necessity for a wiretap and that the government violated the minimization requirements of Title III.

The untenability of the government's refusal is best demonstrated by reference to several specific examples of types of documents.  *See* discussion *infra*. With respect to each of the categories of documents discussed below, the defendants requested the documents from the government in writing, the government refused to disclose the requested documents, and the need for disclosure of the documents to the defendants is firmly grounded in the law interpreting Title III.  The ensuing discussion demonstrates the need for intervention by this Court to order the government to disclose documents that are needed not only by the defendants but also by the court.  If the government is allowed to continue to conceal these documents, the congressional purpose in enacting Title III will be thwarted, undermining public confidence in the administration of criminal justice,  and unnecessary delays in the course of the proceedings in this case are likely to result, leading to waste of scarce judicial resources.

### A.    Surveillance and other records pertaining to necessity.

The government has refused to disclose the records related to surveillance requested by the defendants. *See* Ex. A at 2, ¶ 7; *id.* at 3, ¶ 13. The only grounds for this refusal is the assertion that the government does not intend to introduce testimony at trial relating to the surveillance. *See* Ex. B at 2, ¶ 7; *id.* at 3, ¶ 13. The government has missed the point. The need for disclosure of these records stems from the defendants' impending challenge to the legality of the extensive wiretap in this case. The government's stated intention regarding trial testimony provides no support for continuing to conceal these important records from court and counsel.

The government's surveillance records prior to the application for the wiretap contain material evidence that is central to the court's determination whether or not the government complied with Title III and the Fourth Amendment by seeking a wiretap. These records go to the question of necessity. The need for the wiretap is a function of the state of the government's investigation prior to application for the wiretap order. It can be viewed as the flip-side of probable cause—the more probable cause the government has to support the wiretap, the more likely it is that there is no necessity for the wiretap. As the Tenth Circuit observed, Congress

intended for law enforcement agencies to use less intrusive investigative techniques prior to conducting a wiretap. *See **United States v. Castillo-Garcia**,* 117 F.3d 1179, 1185 (10th Cir. 1997), *overruled on other grounds in **United States v. Ramirez-Encarnacion**,* 291 F.3d 1219 (10th Cir. 2002) (changing standard of review on appeal). To satisfy this congressional purpose, a number of specific steps are taken. First, law enforcement agencies are required to provide "a full and complete statement," 18 U.S.C. § 2518(1)(C), as to whether normal investigative techniques have been tried, what results they produced, and so forth. *Castillo-Garcia*, 117 F.3d at 1185. Second, the issuing judge is required to make an independent assessment of the sufficiency of law enforcement agencies' efforts via normal investigative techniques to expose the crime. *Id.* Evidence obtained in violation of these requirements must be suppressed. *Id.* Third, if the defendants challenge the necessity of a wiretap, they must show that the necessity requirements under Title III were not met. *See **id.*** at 1186. Fourth, the trial court makes an independent determination whether or not the government has complied with Title III (and Fourth Amendment) requirements. The government's showing with respect to compliance with the necessity requirement is measured in "a practical and common sense fashion." *Castillo-Garcia*, 117 F.3d at 1187. The trial court must "undertake a consideration of all the

14

facts and circumstances in order to determine whether the government's showing

of necessity is sufficient to justify a wiretap." *Id.*

The Tenth Circuit has articulated the requirements for a showing of necessity

clearly and explicitly:

> To obtain an electronic surveillance order, the government must
> explain fully in its application what investigative techniques have been
> tried against the target of the wiretap. 18 U.S.C. §§ 2518(1)(c), 2518(3)(c)
> (1994). If any of the four categories of normal investigative techniques
> referred to in the legislative history of Title III have not been tried, the
> government must explain with particularity why each of such untried
> techniques would be either unsuccessful or too dangerous. Those
> investigative procedures are: (1) standard visual and aural surveillance;
> (2) questioning and interrogation of witnesses or participants
> (including the use of grand juries and the grant of immunity if
> necessary); (3) use of search warrants; and (4) infiltration of
> conspiratorial groups by undercover agents or informants. In addition,
> if other normal investigative techniques such as pen registers or trap
> and trace devices have not been tried, a similar explanation must be
> offered as to why they also would be unsuccessful or too dangerous.
> We add pen registers and trap and trace devices to this list because
> they possess a logical relationship and close affinity to wiretaps and
> yet are less intrusive. Thus, unless the government can show that they
> would be ineffective or dangerous they must be tried before resorting
> to wiretaps.

117 F.3d at 1187-88. In order for the defendants to meet their burden, and for the

court to make its independent assessment, the records pertaining to the

investigation undertaken by the government prior to application for a wiretap order

must be disclosed.  The government's continued concealment of these important records cannot be squared with the clear Congressional and Tenth Circuit mandates regarding Title III.

> **B.    Ten-day reports filed with the court that issued the wiretap.**

With respect to progress reports filed by the government with the court that issued the wiretap, the government asserts that it may continue to conceal these reports.  *See* Ex. B at 1, ¶ 1.  The government relies on **United States v. Chimera**, 201 F.R.D. 72, 77 (W.D.N.Y. 2001), in which the documents requested in that case were not material to the particular grounds advanced in that case.  Although the documents requested in **Chimera** might not have been material in the particular circumstances of that case, it does not follow that the progress reports concealed by the government in this case are not material to the issue of necessity in this case.

There is no controlling law in this Circuit of which undersigned counsel is aware that addresses this question.  There is, however, case law from a federal district court in the Fifth Circuit requiring the government to disclose  "10-day progress reports filed by the government with the judges who issued the surveillance orders."  *See* **United States v. Cleveland**, 1997 WL 2554, *4 (E.D. La. 1997) (unpublished opinion available on Westlaw).  The government's position

cannot be squared with the court's holding in *Cleveland* that the government is required to disclose the progress reports it submitted to the court that issued the wiretap order.

Furthermore, the reasons for disclosing the reports outweigh any purported basis for continued concealment of these highly relevant reports. The purpose of ten-day reports is to "limit[] the extent of court authorized intrusions on the privacy of oral communications." *Chimera*, 201 F.R.D. at 76. In this case, the Defendants intend to challenge the government's compliance with the fundamental requirement of avoiding unnecessary intrusions. It is incumbent on the Court to ensure that the government in fact complied with these requirements in this case. The ten-day reports contain information that is directly relevant to determining whether or not the government met these requirements. The court in *Chimera* noted that "[a]n attack upon the admissibility of evidence derived from a court authorized wiretap or eavesdropping device is directed to the core of the government's case." *Chimera*, 201 F.R.D. at 75. It observed that "Title III applications and orders, like search warrant applications and warrants, are considered documents material to the defense under Rule 16(a)(1)(C)." *Chimera*, 201 F.R.D. at 76. The court concluded that "a request for documents which relate to a possible challenge to the

admissibility of evidence derived from orders issued pursuant to § 2518(1) is . . . for the purpose of 'preparation of the defendant's defense,' Fed. R. Crim. P. 16(a)(1)(C), to the Government's case in chief, and thus within the ambit of Rule 16(a)(1)(C)." *Chimera*, 201 F.R.D. at 76.

The disclosure of these reports prior to preparation of the motion to suppress is necessary for the protection of the Defendant's Fourth Amendment rights and statutory rights under Title III. Without these reports, the Court will be unable to ensure that the government has not violated Title III or the Fourth Amendment. Belated disclosure of these reports may result in unnecessary delay in the proceedings, undermining the efficient administration of criminal justice and wasting scarce judicial resources.

C.    *Pen register records and printouts related to the investigation of telephone records.*

The government untenably continues to refuse to disclose pen register records and printouts relating to investigation of telephone records prior to the issuance of the wiretap. *Compare* Ex. A at 2, ¶ 4 *with* Ex. B at 2, ¶ 4. The only asserted ground for this refusal is the claim that Rule 16 does not cover such reports. The government's position is untenable because these records are material to

18

determining whether or not the intrusive step of electronic surveillance was necessary in this particular case.

Federal courts have recognized that these reports are discoverable and defendants are entitled to them. *See, e.g., **United States v. Feola***, 651 F. Supp. 1068, 1144 (S.D.N.Y. 1987) ("[P]en register tapes, and telephone records are clearly included under [Rule 16(a)(1)(C)] as discoverable objects to which defendants are entitled."). *See generally* 2 James G. Carr & Patricia L. Bellia, **The Law of Electronic Surveillance** § 7:12 (2004). While it is true that there is some disagreement among courts on the extent of discovery obligations in this area, and there is not much case law in this area, *see **Wright***, 121 F. Supp. 2d at 1349 (observing that "[o]nly a few courts have issued written decisions on what documents are discoverable" in anticipation of a challenge to the government's compliance with Title III requirements), there are compelling reasons for requiring disclosure in this case.

The defendants and other individuals were subject to a wide-ranging and extensive intrusion into their protected privacy interests as a result of the government's decision to initiate, and renew repeatedly, electronic eavesdropping on a plethora of telephone calls without the consent or knowledge of the participants in those private conversations. Title III was enacted to "limit[] the extent of court

authorized intrusions on the privacy of oral communications." *Chimera*, 201 F.R.D. at 76 (citing *United States v. Kahn*, 415 U.S. 143, 154-55 (1974)). It is impossible to honor the congressional purpose for this statute without disclosure of the documents that contain the best material evidence of compliance with (or violation of) the statutory requirements. The pen register records and related materials will shine light on the state of the government's knowledge at the time of the application for the electronic surveillance authorization from the court. Consequently, they contain indispensable of the necessity (or lack thereof) for this intrusive wiretap.

### D.    *Logs and other materials related to monitoring and minimization.*

The government's position with respect to documents and records pertaining to the monitoring of electronic communications is similarly untenable. It asserts that it need not disclose any records pertaining to minimization training, including minimization instructions, minimization training manuals, materials used in minimization instruction or training, sign-in sheets or similar records pertaining to attendance at the training sessions, and training records. *Compare* Ex. A at 3, ¶ 16 *with* Ex. B at 3, ¶ 16. Although the government asserts that all information pertaining to minimization has already been provided, the government has not produced any minimization logs, nor does the government refer to minimization

logs in its response.  *Compare* Ex. A at 3, ¶ 15 *with* Ex. B at 3, ¶ 15.

Federal courts have recognized that minimization instructions given to the individuals who perform the monitoring and staff the monitoring room or facility are material to determining whether or not the government complied with Title III requirements.  *See, e.g.,* **Chimera**, 201 F.R.D. at 78 ("[I]nstructions by counsel as to how to maintain compliance with an intercept order have been held to be one factor the court may consider in deciding whether the investigators' alleged failure to minimize constituted a violation of the statute.").

Federal courts have required the government to produce monitoring records related to minimization.  *See also* **United States v. Wright**, 121 F. Supp. 2d 1344, 1351 (D. Kan. 2000) (ordering government to produce electronic surveillance monitoring logs); **United States v. Green**, 144 F.R.D. 631, 641 (W.D.N.Y. 1992) (ordering the government to produce "notes on minimization," which are required to demonstrate compliance with minimization requirements of Title III, because these materials related to minimization are "necessary" to determine the defendant's motion to suppress evidence obtained as a result of the Title III wiretap).  Although there are certainly going to be circumstances in which minimization records would not be material, *see, e.g.,* **Chimera**, 201 F.R.D. at 78-79, a leading treatise on the law of

21

electronic surveillance counsels that "where the defense is challenging compliance with the minimization requirement," disclosure of "minimization instructions, monitors' logs, and progress reports **should be routine**."  Carr & Bellia, *supra*, at § 7:13 (emphasis added).  The rationale for this is straightforward and compelling: "These materials are the best evidence of what the monitoring agents were told about the minimization directive and requirement, how they undertook to minimize interception of non-pertinent conversations, and what they told the court during the surveillance."  Carr & Bellia, *supra*, at § 7:13.  Failure by the government to disclose these materials in a timely fashion will waste scarce judicial resources and needlessly cause delay in the administration of criminal justice: "If the defense does not have these materials before the minimization hearing, the proceedings are likely to be more protracted and time-consuming for all concerned, including the court."  Carr & Bellia, *supra*, at § 7:13.

To ensure that the court is fully equipped with all the relevant information to determine whether or not the government complied with Title III minimization requirements in the course of this wiretap, it is imperative that the government disclose these vital records.  *See Green*, 144 F.R.D. at 641 (ordering disclosure of minimization notes).  The defendants have made known from the beginning that

they intend to challenge the government's conduct of electronic surveillance in this case and measure it against the requirements of Title III and the Fourth Amendment. Ensuring that the monitoring agents complied with the law requires the disclosure of records, documents, and materials related to mininization and monitoring. *See Wright*, 121 F. Supp. 2d at 1351 (ordering disclosure of monitoring logs). The government's continued failure to disclose these highly relevant records will cause unnecessary delay and waste scarce judicial resources. *See* Carr & Bellia, *supra*, at § 7:13 (noting that proceedings are likely to protracted and more time-consuming where the defendants are denied access to these records prior to a hearing at which the government's compliance with minimization requirements is put to the test). Accordingly, it is in the interest of justice for this Court to order that the government disclose these records. *See* Carr & Bellia, *supra*, at § 7:13 (counseling that courts make disclosure of minimization instructions and monitoring logs "routine" where the defendants are challenging compliance with minimization requirements).

## CONCLUSION

For the foregoing reasons, the defendants who are represented by court-appointed counsel respectfully request this honorable Court to order the government to disclose documents material to a determination whether the government met Title III's necessity and minimization requirements. The government's continued concealment of these important documents will thwart the congressional purpose in enacting Title III, prevent an independent determination by this Court of the legality of the government's conduct of the wiretap in this case, and very likely lead to unnecessary delay in the course of these proceedings, needlessly wasting scarce judicial resources.

Respectfully submitted,


Electronically filed
Scott M. Davidson
204 Bryn Mawr Drive NE
Albuquerque, NM 87102
(505) 255-9084
Associate Counsel for defendants
represented by court-appointed
counsel for purpose of this and
certain other motions

Stephen D. Aarons
Counsel for Defendant Matthew Hothan
P.O. Box 1027/ 300 Catron St
Santa Fe, NM 87504-1027
(505) 984-1100

Penni Adrian
Counsel for Defendant Russell Trujillo
Adrian & Associates PC
P.O. Box 21576
Albuquerque, NM 87154-1576
(505) 944-1200

Roberto Albertorio
Counsel for Defendant Lloyd Montoya
P.O. Box 91387
Albuquerque, NM 87199-1387
(505) 924-3917

Chuck Aspinwall
Counsel for Defendant John Patrick Nieto
P.O. Box 984
Los Lunas, NM 87031-0984
873-8800

Jason Bowles
Counsel for Defendant George Ripley
P.O. Box 25186
201 3rd NW, Ste. 1370
Albuquerque, NM 87125-5186
(505) 217-2680

Robert Cooper
Counsel for Defendant Adrian Sanford
1011 Lomas Blvd. NW
Albuquerque, NM 87102
(505) 842-8494

Hank Farrah
Counsel for Defendant Rafal Mistzrak
1400 Central SE, Ste. 2000
Albuquerque, NM 87106
(505) 243-6900

Ken Gleria
Counsel for Defendant Holly Bruner
1008 5th ST NW
Albuquerque, NM 87102
(505) 243-7843

Todd Hotchkiss
Counsel for Defendant Dakota Fitzner
P.O. Box 26807
Albuquerque, NM 87125-6907
(505) 247-8558

Kirtan K. Khalsa
Counsel for Defendant Sam Jones
Fine Law Firm
812 Marquette, NW
Albuquerque, NM 87102
(505) 243-4541

Martin Lopez III
Counsel for Defendant Geno Berthod
1500 Mountain Rd., NW
Albuquerque, NM 87104-1359
(505) 243-2900

John Robbenhaar
Counsel for Defendant Ayla Jarvis
1011 Lomas NW
Albuquerque, NM  87102
(505) 242-1950

Joe M. Romero Jr.
Counsel for Defendant Dana Jarvis
1905 Lomas Blvd. NW
Albuquerque, NM 87104-1207
(505) 843-9776

John Samore
Counsel for Defendant Melania Kirwin
P.O. Box 1993
Albuquerque, NM 87103-1993
(505) 244-0450

Ann Steinmetz
Counsel for Defendant Mary Cannant
Box 4305
Albuquerque, NM 87196-4305
(505) 344-9515

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2006, I served a true and correct

copy of this motion by U.S. mail, postage prepaid, on counsel for the United States

at the address listed below:

James R.W. Braun, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103-0607

Electronically filed
Scott M. Davidson