IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                         No. CR 05-1849 JH

DANA JARVIS, et al.,

    Defendants.

### DEFENDANTS' JOINT MOTION TO
### SEVER COUNTS I AND III
### ON GROUNDS OF MISJOINDER
### UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 8
### AND PREJUDICIAL JOINDER UNDER
### FEDERAL RULE OF CRIMINAL PROCEDURE 14

    The Defendants jointly hereby respectfully request the Court to sever Count I from Count III.

## INTRODUCTION

    Counts I and III were improperly joined in the indictment and should be tried before separate juries to secure the Defendants' right to trial by an impartial jury and the right to due process. There is strong empirical evidence of a substantial prejudicial effect of joinder. On the countervailing side of the balancing test, the supposed efficiencies of jointly trying the defendants on separate counts have been overstated. In fact, trying Count I separately from Count III has the potential to be

more efficient. And even supposing that there were an efficiency and convenience advantage to joint trials, the right to a fair trial by an impartial jury and the right to due process should take precedence in our system of criminal justice.

**1.      Counts I and III.**

    **A.      The allegations in the superceding indictment.**

The government alleges, in Count I, that from approximately 1990 to 2005, twenty-two defendants violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846, by conspiring to distribute 1000 kilograms and more of marijuana. *See* Indictment at 1.

Less than half of the Count I defendants are indicted in Count III. The government alleges, in Count III, that ten of the defendants indicted in Count I violated 18 U.S.C. §§ 1956(a)(1)(A)(i), -(a)(1)(B)(i), and -(h), by conspiring to launder monetary instruments. *See* Indictment at 4.

    **B.      The proof required to sustain Counts I and III.**

To prove beyond a reasonable doubt the essential elements of the allegations in Count I regarding 21 U.S.C. § 841(a)(1) and (b)(1)(A), the government must prove the following:

1. The defendant knowingly or intentionally distributed marijuana; and

2. The amount of the controlled substance distributed by the defendant was at least 1000 kilograms.

Tenth Circuit Pattern Jury Instructions 2.85.1 (Distribution of a Controlled Substance—21 U.S.C. § 841(a)(1)). *See also* **United States v. Santistevan**, 39 F.3d 250, 255 (10th Cir. 1994).

Section 846 of Title 21 of the United States Code provides as follows: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

To prove a violation of 21 U.S.C. § 846, the government must prove the following five essential elements beyond a reasonable doubt:

1. Two or more persons agreed to violate the federal drug laws;

2. The defendant knew the essential objective of the conspiracy;

3. The defendant knowingly and voluntarily involved himself in the conspiracy;

4. There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged; and

> 5. The overall scope of the conspiracy involved 1000 kilograms and more of a substance containing a detectable amount of marijuana.

Tenth Circuit Pattern Jury Instructions 2.87 (Controlled Substances—Conspiracy—21 U.S.C. § 846).

There are four essential elements the government must prove to obtain a conviction under 18 U.S.C. § 1956(a)(1)(A)(i):

> 1. The defendant knowingly conducted a "financial transaction" as defined herein;
>
> 2. The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;
>
> 3. The financial transaction involved the proceeds of specified unlawful activity; and
>
> 4. The defendant conducted the financial transaction with the intent to promote the carrying on of specified unlawful activity.

*See* Tenth Circuit Pattern Jury Instructions 2.73 (Money Laundering—Using illegal proceeds to promote illegal activity—18 U.S.C. § 1956(a)(1)(A)(i)).

The government must prove the following four essential elements to obtain a conviction under 18 U.S.C. § 1956(a)(1)(B)(i):

1. The defendant knowingly conducted a "financial transaction," as defined below;

2. The financial transaction involved the proceeds of [specify unlawful activity from 18 U.S.C. § 1956(c)(7)];

3. The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, namely [specify form of unlawful activity charged in the indictment], which unlawful activity constitutes a felony under federal law; and

4. The defendant conducted the financial transaction knowing that it was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

To prove the allegations in Count III with respect to Section 1956(h), the government must prove the elements of conspiracy, although it is not required to prove an overt act in furtherance of the conspiracy. *See* ***Whitfield v. United States***, 543 U.S. 209, 219 (2005).

**2.    Misjoinder under Rule 8.**

*A.    Rule 8(a).*

Federal Rule of Criminal Procedure 8(a) provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if

the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

The allegations of marijuana distribution and money laundering are separate and distinct actions, requiring substantially different elements of proof. For instance, the marijuana distribution conspiracy requires proof that the 22 defendants named in Count I conspired to distribute more than 1000 kilograms of marijuana. To prove the money laundering conspiracy, the government must show that 10 of these defendants conspired to conduct financial transactions, knowing that the property involved in the transactions represented proceeds of unlawful activity, and with the intent to promote the carrying on of specified unlawful activity. *See* Tenth Circuit Pattern Jury Instructions 2.73 (Money Laundering—Using illegal proceeds to promote illegal activity—18 U.S.C. § 1956(a)(1)(A)(i)). In addition, to prove the allegations in Count III, the government must prove that the 10 defendants named in that count conspired to conduct financial transactions involving proceeds of specified unlawful activity, knowing that the property involved in the transactions represented proceeds of a federal felony, and knowing that the transactions were "designed in whole or in part to conceal or disguise the nature, location, source,

ownership, or control of the proceeds of specified unlawful activity." *See* Tenth Circuit Pattern Jury Instructions 2.73.1 (Money Laundering—Concealing illegal proceeds—18 U.S.C. § 1956(a)(1)(B)(i)).

The proof of the allegations in Count I and the proof of the allegations in Count III are wholly distinct. The government might argue that the money laundering conspiracy and the marijuana distribution conspiracy are inextricably intertwined. It might contend that the unlawful activity in Count III is the marijuana distribution conspiracy, and the proceeds of the distribution conspiracy were used and concealed, as alleged in Count III.

But in this case, the indictment does not allege an isolated, discrete transaction or set of transactions in a tightly circumscribed timeframe. Indeed, this indictment is breathtaking in its vagueness. It spans 15 years, involving 22 defendants and others who have not been indicted, and, according to the indictment, involving more than $158,400,000.00. The indictment alleges a massive conspiracy.

Furthermore, if any of the 10 defendants indicted in Count III (all of whom are also indicted in Count I) wish to testify on Count III, but not on Count I, the joinder of counts for trial prejudices these defendants. For this reason, severance should be granted. *See **Cross v. United States***, 335 F.2d 987, 989 (D.C. Cir. 1964) ("Prejudice

7

may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence."). Given the span of time alleged in the indictment, and the large number of defendants, it is likely that  times and places for conduct alleged in Count I with respect to a given defendant will not overlap with Count III for the same defendant.

  *B.*  *Rule 8(b).*

Federal Rule of Criminal Procedure 8(b) provides that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

Where multiple defendants have been charged in a multi-count indictment, the courts are split on whether to apply Rule 8(a) or Rule 8(b).  The majority view is that Rule 8(a) applies only when a single defendant is named in an indictment. *See, e.g.,* ***King v. United States***, 355 F.2d 700, 703-05 (1st Cir. 1966); ***United States v. Papadakis***, 510 F.2d 287, 299-300 (2nd Cir. 1975) ("8(a) relates to joinder of offenses, while 8(b) relates to joinder of defendants. However, when a defendant in a

multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)."); ***United States v. Turoff***, 853 F.2d 1037, 1043 (2nd Cir. 1988) ("[O]ur cases indicate that when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)." (Internal quotation marks omitted).); ***United States v. Serubo***, 460 F. Supp. 689, 694 (E.D. Pa. 1978) ("This is an indictment involving various defendants and therefore, both the joinder of offenses and defendants must be tested under Rule 8(b)."); ***United States v. Slawik***, 408 F. Supp. 190, 212 (D. Del.), *aff'd without op.*, 564 F.2d 90 (3rd Cir. 1975) ("Rule 8(b) is the mechanism for assessing misjoinder when a defendant named in one count attacks the joinder of other counts in the same indictment that do not contain charges against him or when one of the defendants in a multiple-defendant count attacks joinder of one or more other such multiple-defendant counts."); ***United States v. Mandel***, 415 F. Supp. 1033, 1045 (D. Md. 1976) ("Rule 8(a) deals with joinder of offenses committed by a single defendant and has no application when two or more defendants are involved.") (citing 1 C. Wright, Federal Practice and Procedure s 144, at 318 (1969)).

The Tenth Circuit has held that Rule 8(b) applies where more than one defendant is joined in the same indictment, even where the question is whether

multiple counts were improperly joined. *See* **United States v. Eagleston**, 471 F.2d 11, 14 (10th Cir. 1969) ("Rule 8(a) . . . does not apply in cases where more than one defendant is joined in the same indictment. Such joinder is governed by Rule 8(b).") (citing **Williamson v. United States**, 310 F.2d 192 n. 16 (9th Cir. 1962); **United States v. Welsh**, 15 F.R.D. 189 (D.D.C. 1953); 1 Wright, Federal Practice and Procedure 144, at 318 (1st ed. 1969)). *But see* **United States v. Biaggi**, 705 F. Supp. 852, 854-55 & n.3 (S.D.N.Y. 1988) (criticizing the "primacy thesis"—described as the view that Rule 8(b) takes primacy over Rule 8(a) when there are multiple defendants).

Under Rule 8(b), joinder is improper in this case because of the disparity between the identity of the defendants in the counts. There are twelve Count I defendants who are not implicated in Count III. For at least these twelve defendants, there is no logical connection between the offenses alleged in these two counts. And for defendants indicted in both counts, there may still be no logical connection between the two offenses due to the exceedingly long time span and large number of defendants indicted.

With 22 individuals alleged to have conspired over a period of fifteen years, as alleged in Count I, and 10 individuals over a period of fifteen years, as alleged in Count III, prejudice may result if the evidence shows that there was not a single

10

conspiracy, but multiple conspiracies. *Cf.* ***Kotteakos v. United States***, 328 U.S. 750, 775 (1946) (recognizing that misjoinder was implicated, but deciding the case based on variance). Consider the vastness of the allegation in Count I—more than $158,400,000.00 involved; at least 22 defendants involved in a conspiracy to distribute marijuana across several states; and all of this spanning a period of fifteen years. The discovery to date numbers in the neighborhood of 60,000 pages, and counting. Even considering Count I alone, there is the potential for misjoinder of defendants. For instance, Defendants A, B and C might have been involved in a conspiracy for years 1-3, involving quantity x of marijuana; and Defendants C, D, and E might have been involved in a conspiracy for years 4-6, involving quantity 10x of marijuana. It would be prejudicial for Defendants A and B to be joined for trial with an entirely separate conspiracy, spanning different locations and/or different periods of time, involving defendants with whom they did not conspire, and pertaining to amounts of contraband far greater than the amounts with which they were involved. *See* ***Commonwealth v. Gaynor***, 820 N.E.2d 233, 247 (Mass. 2005) (recognizing the "closeness of space and time" are relevant factors in determining whether offenses are related for purposes of joinder). In our hypothetical, Defendants A, B and C should be tried for the conspiracy in which they were alleged

to have been involved, and C should be tried for the various conspiracies in which he or she was allegedly involved. Although joinder is proper in the right case, it runs the risk, particularly in this case, of violating the fundamental tenet of our criminal justice system that "guilt is personal." *Korematsu v. United States*, 323 U.S. 214, 243 (1944) (Jackson, J., dissenting) ("[I]f any fundamental assumption underlies our system, it is that guilt is personal . . . ."); *see United States v. Lane*, 474 U.S. 438, 449 (1986) ("[A]n error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.") (Internal quotation marks omitted).

## 3. Trying Count I and Count III to the same fact-finder is prejudicial under Federal Rule of Criminal Procedure 14.

The Court should order separate trials of Counts I and Count III, as provided for under Rule 14, to secure the fundamental rights protected by the Sixth Amendment (right to trial by impartial jury) and the Fifth Amendment (due process). Trying these disparate counts jointly presents unnecessary risk of prejudice to the defendants.

Rule 14 provides that "the court may order separate trials of counts" if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14. *See also **United States v. Muniz***, 1 F.3d 1018, 1022 (10th Cir. 1993) ("[T]he district court may sever counts which are properly joined if it appears the defendant is prejudiced by their joinder."). As discussed above in reference to Rule 8, there is a significant potential in this case for prejudice to the defendants as a result of the joinder of Counts I and III in the ame trial.

*A.    There is empirical evidence of substantial  prejudice as a result of joinder.*

A recent empirical study of federal criminal trials demonstrates that there is a quantifiable, significant prejudicial effect as a result of joinder. *See* Andrew D. Leipold & Hossein A. Abbassi, *The Impact of Joinder and Severance on Federal Criminal Cases: An Empirical Study*, 59 Vand. L. Rev. 349, 355 (March 2006) (hereinafter *Joinder and Severance*). In this study, an economist and a law professor conducted a study of "over 375,00 formally charged federal defendants whose cases terminated during fiscal years 1999 through 2003." *Id.* at 363. The data analyzed by the authors was drawn from "records compiled by the Federal Judicial Center, the research and education agency of the federal judicial system." *Id.* n.58 (citing

http://www.fjc.gov/, and http://www.icpsr.umich.edu, both of which the authors last visited March 24, 2006). The authors controlled for a variety of factors, such as (1) whether there was a jury trial versus a bench trial, *see **Joinder and Severance*** at 373-77, (2) type of crime, *see **id.*** at 377-80, (3) whether defense counsel was a public defender, retained, or a panel attorney, *see **id.*** at 380-82, and (4) in which federal circuit the trial was located, *see **id.*** at 382-83. When various factors were controlled for, the data showed that for federal criminal trials from fiscal years 1999 to 2003 involving multiple defendants, the conviction rate was 74% when a defendant faced one count, and 83% when a defendant faced multiple counts." *Id*. at 383. The scholars also concluded that "[t]he joinder effect is quite robust. It is significant and reliable in each instance when we analyze other variables, including variables such as the identity of the factfinder, that are strongly correlated to conviction rates." ***Id.*** at 384.

The significance of this data for this trial is that the Court should weigh very carefully the balance of interests at stake as it undertakes the analysis under Rule 14. As the authors noted, "[i]ncreasing a defendant's chance of conviction by more than 10% is a high price to pay to secure the societal benefits of joined trials." ***Id.*** at 385.

### B.   *The efficiency of joint trials is overstated.*

On the side of the equation favoring joint trials, scholars have noted that the supposed benefits of joinder have been overstated. There "is reason to think that the correlation between joint trials and efficiency is less than is sometimes believed." *Id.* at 391. Legal scholars have concluded that "the government's interest [in joinder is] smaller than conventional wisdom suggests." *Id.* at 399. "[C]ourts currently miscalculate the defense and governmental interests when deciding whether to sever." *Id.* at 401. Neither the fear of an increase in the number of trials, nor the fear that the defendants are trying to gain some unfair advantage from separate trials, are supported by sound analysis.

It is a fallacy that a greater use of severance results in a proportional increase in the number of trials.  *See* Robert O. Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices*, 77 MICH. L. REV. 1379, 1381 (1979) ("[C]ourts have greatly exaggerated the supposed efficiencies of joint trials while grossly underestimating the impediments joint trials pose to fair and accurate determinations of individual guilt or innocence."), *quoted in* ***Joinder and Severance***, *supra*, at 361 n. 56. Dawson explains how severance actually may lead to the disposition of a second case through settlement rather than through trial. *See*

15

Dawson, *cited in* ***Joinder and Severance***, at 392 n. 120.  "A defendant who successfully moves for three separate trials may not stand trial three times; if the first trial ends in a conviction (as most do), the defendant may quickly plead guilty to the remaining counts.  Conversely, if the first trial ends in an acquittal, the prosecutor might decide to cut her losses and either offer an attractive deal to the remaining defendants or even nol pros the remaining charges." ***Id.*** at 392.

The Sentencing Guidelines provide an incentive for a defendant to plead guilty to the remaining counts following a conviction on the first count if she believes that she may receive a reduction in the offense level for acceptance of responsibility. U.S. Sentencing Guidelines § 3E1.1 (providing for a two or three level reduction in the offense level where a defendant "clearly demonstrates acceptance of responsibility for his offense").

In this case, there are considerable inefficiencies to trying everyone, and every count jointly.  Joint trial will necessitate the presence of all 22 defendants, and at least as many defense lawyers, at every stage of the trial.  Joint trial will require that the least culpable defendant and his or her lawyer be present when extraneous evidence is presented regarding other counts and/or other defendants.  It could mean 22 opening arguments, 22 closing arguments, cumbersome bench conferences,

16

and so forth.

The proceedings and preparation to date in this case demonstrate the inefficiencies of indicting this many defendants in a single indictment. Each defendant and each lawyer has had to sift through mountains of data, most of which does not pertain to that defendant, in an attempt identify the sliver of evidence that pertains to that defendant. This case is a good example of the inefficiency of joinder. At trial, these inefficiencies will only be compounded.

As the Court considers how best to try these 22 defendants on these allegations, it should take into account the significant prejudicial effect of joinder that has been demonstrated empirically.

### C.    *Protecting fundamental individual rights trumps expediency.*

One might argue that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). This oft-repeated contention is based on a mis-understanding of the issue before the Court. The question is not *"Qui bono?"* That is, the issue is not whether the defendant or the government benefits from trying Counts I and III jointly versus trying them separately.

The more fundamental and important legal question is whether justice is better served by trying these counts and defendants jointly or separately.  On this question, the Court cannot ignore the empirical evidence: the risk of prejudice to the defendants is substantial when multiple counts are joined in multiple defendant trials.  Infringement on the right to due process and trial by an impartial jury, as protected by the Fifth and Sixth Amendments, should not be sacrificed for the sake of expediency.  *See* 1A Charles Alan Wright, **FEDERAL PRACTICE & PROCEDURE: CRIMINAL** 3 (1999) § 141, at 6, *quoted in* **Joinder and Severance**, *supra*, at 361 ("[It] seems strange that one presumably innocent may be made to undergo something less than a fair trial, or that he may be prejudiced in his defense if the prejudice is not 'substantial,' merely to serve the convenience of the prosecution and the efficiency of the judicial system."); **Joinder and Severance**, *supra*, at 390 ("[T]o say a defendant is not entitled to a separate trial just because his chances of acquittal are better is to say that a defendant should not be granted a severance merely to avoid a significant (~10%) risk that his conviction will be influenced by improper factors."). *See also United States v. Fountz*, 540 F.2d 733, 738 (4th Cir. 1976) ("[T]he only real convenience served by permitting joint trial of unrelated offenses against the wishes of the defendant may be the convenience of the prosecution in securing a

conviction.").

The Defendants in this case urge the Court to examine the empirical data, consider the competing values, and exercise its discretion to sever Count I from Count III at trial. Rule 14 expressly provides this Court with the authority to do so. Congress has given this Court the authority to take into account the substantial prejudicial effect of joinder on the fairness of federal criminal trials and ensure that improper factors do not influence the jurors in this case.

## CONCLUSION

For the foregoing reasons, the Defendants jointly and respectfully request that the Court sever Counts I and III, pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure, the Fifth Amendment, and the Sixth Amendment.

Respectfully submitted,

<u>Electronically filed</u>
Scott M. Davidson, Ph.D., Esq.
1011 Lomas Boulevard NW
Albuquerque, NM 87102
(505) 255-9084
Associate Counsel for Defendants
  represented by counsel appointed
  under the Criminal Justice Act

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October, 2006, I served a true and correct copy of the Defendants' Joint Motion to Sever Counts I and III on Grounds of Misjoinder Under Federal Rule of Criminal Procedure 8 and Prejudicial Joinder Under Federal Rule of Criminal Procedure 14 by U.S. mail, postage prepaid, on counsel for the United States at the address listed below:

James R.W. Braun, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87102

Electronically filed
Scott M. Davidson, Ph.D., Esq.