IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                  No. CR 05-1849 JH

DANA JARVIS, et al.,

      Defendants.

**DEFENDANTS' JOINT REPLY TO
THE GOVERNMENT'S RESPONSE (DOC. #778)
TO THE DEFENDANTS' JOINT MOTION (DOC. #770)
IN THE ALTERNATIVE TO RECONSIDER
THE COURT'S PARTIAL DENIAL (DOC. # 733)
OF THE DEFENDANTS' MOTION (DOC. #573)**

The Defendants hereby jointly and respectfully reply to the government's response (Doc. 778) to the Defendants' joint motion in the alternative to reconsider (Doc. 770, hereinafter referred to as the motion to reconsider) the Court's partial denial (Doc. 733) of the Defendants' joint motion to compel discovery related to the interception of electronic communications (Doc. 573, hereinafter referred to as the discovery motion).

In this reply, the Defendants do not re-iterate the reasons stated at length in the motion to reconsider, nor do they discuss each document category again. Instead, the Defendants offer a targeted reply, focusing on the categories and issues that call for additional discussion in light of the Government's response.

**1.   Legal background: Title III**

The Defendants' request and the untenability of the Government's insistence on concealing material information are best viewed against the legal backdrop of Title III.

"Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Berger v. New York*, 388 U.S. 41, 63 (1967). To ensure that this threat does not become a reality, "[t]he Supreme Court has emphasized that the Government should strictly adhere to the requirements of the wiretap statute." *United States v. Donovan*, 429 U.S. 413, 440 (1977).

**A.   The necessity requirement.**

Electronic eavesdropping is governed by the federal wiretap statute, 18 U.S.C. §§ 2510-22. Authorization for a wiretap requires two preliminary findings: (1) probable cause to believe that an individual is committing, has committed, or is about to commit certain offense, that relevant communications will be intercepted

by the wiretap, and that targeted persons will use the targeted facility, *see* 18 U.S.C. § 2518(3)(a); and (2) failure of other investigative procedures or an explanation for why the procedures reasonably appear to be unlikely to succeed if tried, or an explanation for why the procedures are too dangerous to try, *see* 18 U.S.C. § 2518(1)(c).

The second of these requirements is referred to as the "necessity" requirement. *See* **United States v. Mitchell**, 274 F.3d 1307, 1311 (10th Cir. 2001). The Tenth Circuit stated that the necessity requirement under Title III should be "interpreted in a practical and common sense fashion." *Id.* (citing **United States v. Armendariz**, 922 F.3d 602, 608 (10th Cir. 1991)). If an application was granted without meeting the necessity requirement, the wiretap evidence must be suppressed. **United States v. Ramirez-Encarnacion**, 291 F.3d 1219, 1222 (10th Cir. 2002) (citing **United States v. Green**, 175 F.3d 822, 828 (10th Cir.1999)).

The Government wants to "cherry-pick" the information upon which the Court assesses its compliance with the necessity requirement. It wants to reveal only a partial, incomplete picture, which would result in a distorted image, preventing the Court from doing its statutory duty to ensure that the Government strictly complied with Title III's requirements. The Tenth Circuit has repudiated the

Government's position.  In order for a district court to assess whether the statutory necessity requirement was met, the Tenth Circuit has stated that the court must "undertake a consideration of all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap." *United States v. Castillo-Garcia*, 117 F.3d 1179, 1185 (10th Cir. 1997), *overruled on other grounds in* **Ramirez-Encarnacion**, 291 F.3d 1219 (changing appellate standard of review).  Because the statute's requirements must be strictly complied with, and the court is charged with considering "all the facts and circumstances" pertaining to the Government's compliance with these statutory requirements, it is important that the Governmemt divulge the information needed to conduct a full necessity analysis.

    **B.**    **Minimization.**

The purpose of Title III is to "limit[] the extent of court authorized intrusions on the privacy of oral communications."  ***United States v. Chimera***, 201 F.R.D. 72, 76 (W.D.N.Y. 2001) (citing ***United States v. Kahn***, 415 U.S. 143, 154-55 (1974)).  In order to carry out the purpose of the statute with respect to the minimization requirements, the Court and counsel must be able to conduct a full minimization analysis.  The Government's refusal to divulge the requested information stands in

the way of carrying out the statutory purpose. Federal courts and legal scholars recognize that records pertaining to minimization, such as instructions given by the prosecutor, *see* **Chimera**, 201 F.R.D. at 78, monitoring logs, *see* **United States v. Wright**, 121 F. Supp. 2d 1344, 1351 (D. Kan. 2000), notes on minimization, *see* **United States v. Green**, 144 F.R.D. 631, 641 (W.D.N.Y. 1992), and related records pertaining to compliance with statutory minimization requirements, should be routinely disclosed to the Defendants. *See* Carr & Bellia, *supra*, at § 7:13.

In effect, the Government wants Court and counsel to take it on faith that the statute's minimization requirements were met. The statute does not afford the Government such broad discretion. On the contrary, the case law is clear that the statute's requirements must be strictly complied with and it is the Court's duty to consider "all the facts and circumstances" to make a determination whether or not the statute was violated. *Cf.* **Castillo-Garcia**, 117 F.3d at 1187.

**2.      Category 3.**

**A.      Contract personnel.**

The Government asks for an explanation of how the Government's reliance on contract personnel to monitor this wiretap pertains to minimization and necessity. Doc. 778 at 7.

*i.     Minimization.*

The use of contract workers raises questions about minimization because these individuals are temporary contract workers; they are neither FBI agents nor DEA agents. They lack the training and experience with wiretaps that federal law enforcement agents have. They are not part of a federal law enforcement agency that must operate within strict legal limits. They are hired on a temporary basis to fill a short-term post. Therefore, their ability to strictly comply with Title III requirements is dubious.

This request and the Government's response must be considered in the context of what the Government insists on concealing from the Court and from the Defendants. The Government refuses to divulge documents showing

- whether temporary workers who are not federal law enforcement agents or officers conducted the electronic monitoring, *see* Doc. 778 at 6-7,

- whether these contract workers received any training at all in minimization techniques and statutory minimization requirements, *see **id.*** at 11-12,

- what training, if any, they received, *see **id.**,*

- how many of these temporary workers were in the wiretap room at one time, *see **id.**,* and

- whether or not there was any attempt made to secure the wiretap room by maintaining a sign-in sheet. *See **id.***

*ii.    Necessity.*

In this case, the wiretap was extended numerous times. Each subsequent application for a wiretap must meet the necessity requirement. The continuation of normal investigative techniques during the initial wiretap period is required under Title III.

To meet the necessity requirement, "the government must show that traditional investigative techniques have been tried unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to attempt." ***United States v. Ramirez-Encarnacion***, 291 F.3d 1219, 1222 (10th Cir. 2002) (citing 18 U.S.C. §§ 2518(1)(c), 2518(3)(c)). If any traditional investigative technique has not been tried, the Government must "explain why with particularity," ***Ramirez-Encarnacion***, 291 F.3d at 1222 (citing ***Mitchell***, 274 F.3d at 1310), and it "must also explain a failure to use other techniques such as pen registers or trap and trace devices." ***Ramirez-Encarnacion***, 291 F.3d at 1222.[1] A court will consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap . . . and [will] read the necessity requirement in a

---

[1] On appeal, the Tenth Circuit Court of Appeals will "examine *de novo* whether 'a full and complete statement' was submitted meeting section 2518(1)(c)'s requirements," and will "review the conclusion that the wiretap[ ][was] necessary in each situation for an abuse of discretion." ***Ramirez-Encarnacion***, 291 F.3d at 1222 n.1 (internal quotations omitted).

common sense fashion." *Ramirez-Encarnacion*, 291 F.3d at 1222 (internal citations and quotations omitted).

The legislative history of the Act clarifies what is meant by "other investigative procedures":

> Normal investigative procedures would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants and the infiltration of conspiratorial groups by undercover agents or informants . . . .

Senate Committed on the Judiciary, Report on the Omnibus Crime Control and Safe Streets Act of 1967, 90th Cong., 2d Sess. (S. Rep. 1097 April 29, 1968) at 101.

Because of the highly intrusive nature of wiretaps, the necessity requirement is essential to ensure their limited use. As the Tenth Circuit has observed, "the purpose of the necessity requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997).

The inability of untrained and unsupervised temporary workers—who are not federal law enforcement officers----to continue normal investigative techniques during the wiretap would undermine the Government's claim that subsequent

wiretaps were necessary. Without the continued use of normal investigative techniques, none of the subsequent wiretaps can meet the necessity requirements under Title III. Thus, the Government's reliance on private contract personnel hired on a temporary basis to staff a wiretap casts doubt on the necessity of any of the wiretaps beyond the initial authorization.

Because the use of untrained, unsupervised temporary workers who lack the experience and training of federal law enforcement officials would impeded the Government's ability to employ the full range of traditional investigative techniques during the wiretap, the Government's reliance on such personnel in this case is material to the question whether subsequent wiretaps met the necessity requirement.

### B.    Preservation of evidence.

With respect to the Defenedants' entitlement to documents pertaining to the law enforcement agencies' preservation of evidence, the Government offers only its *ipse dixit* that this is not relevant. *See* Doc. 778 at 7. The Government offers no rationale or explanation for its bald assertion.

### C.    Internal budgetary concerns as a factor in authorizing the wiretap.

With respect to the Defendants' request for the agencies' policies for requesting such wiretaps, the Government again offers only blanket assertions, with no rationale or explanation. *See* Doc. 778 at 7.

### D.    Draft or "advance" applications for wiretaps.

It appears that the Government has conceded that in advance of the stamped dates indicated in the pleadings filed in this case, the Government provided to approving judges advance copies of affidavits and perhaps other materials related to these wiretaps. The Defendants are entitled to these affidavits and other materials because they are directly relevant to the agent's credibility and to the necessity for the wiretaps. If the Government has destroyed these copies in hard copy or paper format, the Defendants are entitled to an explanation of the reason for this destruction of evidence relevant to the legality of the wiretap. Furthermore, the Defendants are entitled to electronic copies of these documents, if such electronic copies can be recovered from the computer hardware on which they were prepared. Furthermore, the Defendants are entitled to information about the legally questionable process by which the Government gives advance copies of wiretap

materials to approving judges. As the court noted in *Chimera*, "Title III applications and orders, like search warrant applications and warrants, are considered documents material to the defense under Rule 16(a)(1)(C)." 201 F.R.D. at 76.

### 3.   Category 12.

The Defendants are entitled to the documents sought in this category because they are directly relevant to whether or not the Government adequately pursued the use of cooperating sources. The Government's reluctance to divulge this information is devoid of any supporting rationale; the Government in its response does not even attempt to articulate a rationale. *See* Doc. 778 at 9-10. The Government leans heavily on its case agent's declaration that further use of cooperating sources would not be helpful. But the agent's word is insufficient and the Defendants are entitled to the information upon which the agent relied in making that sworn statement. As legal scholars have observed, "[f]alsehoods have been held to be material where the affiant exaggerated te extent to which physical surveillance had been compromised, understated the extent of informants' knowledge, willingness to testify, or usefulness as a witness, misstated the size of the target's organization, or made statements in the affidavit that were inconsistent with later statements or testimony." Carr & Bellia, **THE LAW OF ELECTRONIC**

SURVEILLANCE, § 6:31 at 6-83.

### 4.    Category 13.

With respect to surveillance reports, the Government ignores the fact that a leading treatise on the law of electronic surveillance declares that courts should "allow discovery of surveillance records prior to the suppression hearing." 2 James G. Carr & Patricia L. Bellia, **The Law of Electronic Surveillance** § 6:29 at 6-67 (2004). Apparently, the Government has no response to this.

And the Government also has no response to the Defendants' clarification that they are seeking only the observations made by the officers and agents, not their thoughts, ideas, or work product. *See* Doc. 778 at 10-11.

### 5.    Category 14.

The Defendants offered six separate reasons in support of their request for the sign-in sheets for the monitoring facility. Doc. 770 at 15-19.

With respect to the first reason, having to do with maintaining the security of this place where evidence is gathered, the Government has no response. *See* Doc. 778 at 11.

With respect to the second reason, having to do with flagrant disregard for minimization procedures due to having too many individuals in the monitoring room, the Government contends that the sign-in sheets will not answer the question whether or not the minimization requirements of Title III were met. But the sign-in sheets are a piece of the puzzle. No one item of evidence will answer this complex question that depends on a variety of factors. Only the sign-in sheets will show how many people were in the wiretap room when this evidence was gathered, which is one of the factors to be considered in determining whether minimization requirements were met. Consequently, the Defendants are entitled to this information.

With respect to the Defendants' remaining reasons for requesting the sign-in sheets, the Government has no response. *Compare* Doc. 770 at 17-19 *with* Doc. 778 at 11-12.

## 6.    Category 16.

The Defendants provided an in-depth explanation of the reason they are entitled to minimization training records, including citations to four federal cases. *See* Doc. 770 at 19-22. The Government does not address or attempt to distinguish any of the cases cited. *See* Doc. 778 at 11-12. The only response from the

Government is to argue that it is irrelevant whether the Government made sufficient efforts to comply with Title III requirements. Doc. 778 at 11. Contrary to the Government's *ipse dixit*, the determination of the Government's compliance with Title III minimization requirements includes its efforts to comply, such as "whether the monitoring personnel are provided with minimization instructions." ***United States v. King***, 991 F. Supp. 77, 91 (E.D.N.Y. 1998) (citing ***United States v. Rizzo***, 491 F.2d 215, 217 (2nd Cir. 1974); ***United States v. Santoro***, 647 F. Supp. 153, 160-61 (E.D.N.Y. 1986)). For this reason, and all the other reasons not responded to by the Government, the Defendants are entitled to minimization training records, if any such training was in fact done, and if any such records were kept.

## Conclusion

For the foregoing reasons, the reasons stated in the motion to reconsider, and the reasons stated in the discovery motion, the Defendants respectfully request that the Court reconsider its partial denial of the Defendants' joint discovery motion. The Defendants also respectfully request that the Court order the Government to produce the documents needed to carry out Title III's statutory purpose of limiting the extent of court authorized intrusions on the privacy of oral communications.

        Respectfully submitted,

        <u>Electronically filed</u>
        Scott M. Davidson, Ph.D., Esq.
        1011 Lomas Boulevard NW
        Albuquerque, NM 87102
        (505) 255-9084
        Associate Counsel for Defendants
          represented by CJA counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2006, I served a true and correct copy of this pleading to by U.S. mail, postage prepaid, on counsel for the United States at the address listed below:

James R.W. Braun, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87102

        <u>Electronically filed</u>
        Scott M. Davidson, Ph.D., Esq.