IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number: CR 05 1849 JH |
| | ) | |
| DENNIS WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS INDICTMENT WITHOUT PREJUDICE
ON THE BASIS THAT THE CURRENT UNITED STATES ATTORNEY
HAS BEEN UNCONSTITUTIONALLY APPOINTED**

The Defendant, Dennis Wilson, requests this Court dismiss the indictment which has been filed in this case on the basis that the prosecution is being pursued by a United States Attorney who has been unconstitutionally appointed.  Mr. Wilson asserts that 28 U.S.C. § 546(d) is unconstitutional on its face with regard to the provision that allows a United States District Court to appoint an interim United States Attorney upon the expiration of the 120 day interim appointment having been made by the Attorney General.  On January 25, 2008, the United States District Court for the District of New Mexico exercised its authority under 28 U.S.C. § 546(d) and appointed Gregory Fouratt as the interim United States Attorney for the District of New Mexico.  Mr. Fouratt is now exercising the fundamental power of the Executive to prosecute alleged violations of federal law, yet he has been appointed by, and in essence is accountable to the Article III judges who constitute the United States District Court for the District of New Mexico.  Mr. Wilson asserts that the appointment of Mr. Fouratt as the prosecutor in his case violates the separation of powers set forth in the first three Articles of the United States

1

Constitution.  Mr. Wilson also asserts that Mr. Fouratt's appointment violated the Appointments

Clause, Art. II, § 2, Cl.  2, because he is ultimately supervised by the United States District Court

for the District of New Mexico, not the Attorney General.  Since there is not a constitutionally

appointed United States Attorney whose authority flows from the Executive Branch of

government, the continued prosecution of Mr. Wilson is constitutionally impermissible and this

case must be dismissed without prejudice until a constitutionally valid United States Attorney is

appointed.  As grounds for this motion, Mr. Wilson states as follows:

## ARGUMENT

Article II, § 1, cl. 1, of the United States Constitution provides that "[t]he executive

Power shall be vested in a President of the United States of America." It is without question that

governmental investigation and prosecution of crime is a quintessentially executive function.

*See*, *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656 (1985); *Buckley v. Valeo*, 424

U.S. 1, 138-140, 96 S.Ct. 612, 691-692 (1976); *United States v. Nixon*, 418 U.S. 683, 693, 94

S.Ct. 3090, 3100 (1974).  Mr. Wilson asserts that Justice Scalia was constitutionally clairvoyant

when he wrote, "[T]he President's constitutionally assigned duties include *complete* control over

investigation and prosecution of violations of the law, and that the inexorable command in

Article II is clear and definite: the executive power must be vested in the President of the United

States." *Morrison v. Olson*, 487 U.S. 654, 710, 108 S.Ct. 2597, 2629 (1988) (Scalia, J.,

dissenting) (emphasis added).

Title 28, Section 547 of the United States Code enumerates a United States Attorney's

responsibilities to prosecute criminal cases brought by the Federal government, to prosecute and

defend civil cases in which the United States is a party, and to collect debts owed the Federal

government that cannot be collected through administrative means. 28 U.S.C. § 547. Since 1789, federal law has mandated that a United States Attorney be appointed by, and serve at the discretion of, the President of the United States, with the advice and consent of the United States Senate. Prior to 2006, Title 28, Section 546 of the United States Code further delegated appointment power to the Attorney General where a district's United States Attorney's office remained vacant. The Attorney General's appointment power was limited in candidacy and scope. An Attorney General could not appoint an individual that had previously been refused by the United States Senate pursuant to their advice and consent responsibilities. 28 U.S.C. § 546(b). Furthermore, an Attorney General's appointment would last only until proper appointment of a United States Attorney by the President, but in no case would the Attorney General's appointee be permitted to hold office beyond 120 days. 28 U.S.C. § 546(c). If the Attorney General's appointment expired under the 120 day rule, the United States District Court had the power to appoint an interim United States Attorney until a proper appointment by the President of the United States, with presentment to the Senate, could be effected. 28 U.S.C. § 546(d).

In 2006, Congress eliminated subsection (d) of Section 546, the provision that allowed the United States District Court to appoint an interim United States Attorney upon the expiration of the statutory 120 day period. In 2007, Congress once more amended 28 U.S.C. § 546, this time reinstating the statutory language in effect until 2006. *A bill to amend chapter 35 of title 28, United States Code, to preserve the independence of United States Attorneys*, Pub.L. No. 110-34 (2007).

Mr. Wilson asserts that 28 U.S.C. § 546(d), on its face, and as applied in this case, violates the separation of powers and is patently unconstitutional.  The separation of powers is one of the basic foundations of the United States' federalist system by which "[t]he Constitution [seeks] to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." *Bowsher v. Synar*, 478 U.S. 714, 721, 106 S.Ct. 3181, 3185 (1986).  The Supreme Court has, accordingly, given both voice and importance to the doctrine.  *See, e.g.*, *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 659 (1989); *Bowsher*, 478 U.S. at 721-728; *I.N.S. v. Chadha*, 462 U.S. 919, 951-952, 103 S.Ct. 2764, 2784 (1983). The driving force behind separating and diffusing governmental power is "to secure liberty." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 876 (1952) (Jackson, J., concurring). "The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629, 55 S.Ct. 869, 874 (1935).  "That this system of divisions and separations of powers produces conflicts, confusion, and discordance at times is inherent, but it was deliberately so structured to assure full, vigorous, and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power." *Bowsher*, 478 U.S. at 722.

28 U.S.C. § 546(d) eviscerates Executive Branch authority and action because a judicially accountable official has been trusted with faithfully executing the law.  Mr. Wilson asserts that 28 U.S.C. § 546(d) (providing that district courts may appoint an interim United States Attorney "until the vacancy is filled") is in direct conflict with Art. II, § 1, Cl.1 of the

Constitution as well as § 28 U.S.C. § 541(a) (the power to appoint United States Attorneys is conferred only upon the President).

A similar issue was addressed by the United States Supreme Court in *Morrison v. Olson*, 487 U.S. 654 (1988). There, the Court considered, among other issues, the constitutionality of the independent counsel provisions of the Ethics in Government Act of 1978 ("the Act"). The Act gave power to the Special Division, a court created by the Act, to appoint an independent counsel. The decision ultimately rested on the distinction between "principal" and "inferior" officers of the United States. Congress could not delegate the appointment of "principal" officers in anyone other than the Executive, but could validly delegate the appointment of "inferior" officers. The Supreme Court held the appointment of an independent counsel pursuant to the Act was that of an "inferior" officer, capable of delegation, and ultimately upheld the constitutionality of the Act's appointment provisions. *Id.* at 677.

The majority's decision in *Morrison*, however, is materially distinguishable from the instant case on many fronts. First, in *Morrison*, the judicially-made appointment was purported to be necessary because an *intra* branch conflict had arisen. Here, no intra branch conflict existed prior to Mr. Fouratt's appointment. Instead, the raw opportunity to replace the Attorney General's interim United States Attorney triggered the Article III judges who comprise the District Court for the District of New Mexico to act, a situation clearly devoid of necessity or exigent circumstances.

Second, in *Morrison,* the Court noted that the appointing judges were "ineligible to participate in any matters relating to an independent counsel they have appointed." *Morrison,* 487 U.S. at 677; *See also*, 28 U.S.C. § 49(f). In the instant case, the opposite is true. Every case,

5

even civil cases prosecuted or defended by the United States in the United States District Court for the District of New Mexico come under the control direction and supervision of Mr. Fouratt and the cases will be heard and adjudicated before Mr. Fouratt's bosses - the judges who appointed him.

Finally, the appointing judges in *Morrison* acted only upon the request of the Attorney General.  In the instant case, however, the Article III judges in the District of New Mexico acted *sua sponte*.  Unlike *Morrison,* the Attorney General did not request assistance from the United States District Court for the District of New Mexico to select the chief law enforcement officer for the state.  Nonetheless, the United States District Court for the District of New Mexico took it upon itself to select its designee to discharge Executive Power as the United States Attorney.

The dissenting opinion by Justice Scalia in *Morrison,* in the context of judicially appointed prosecutors, proposed a test to comport with the separation of powers between branches of government and to ensure that the Executive Power was not emasculated:

> It seems to me, therefore, that the decision of the Court of Appeals invalidating the present statute must be upheld on fundamental separation of powers principles if the following two questions are answered affirmatively: (1) Is the conduct of a criminal prosecution (and of an investigation to decide whether to prosecute) the exercise of purely executive power?  (2) Does the statute deprive the President of the Untied States of exclusive control over the exercise of that power?

*Id*. at 705.

The separation of powers tension inherent in a judicially appointed prosecutor is obvious. What happens in a case now prosecuted in the District of New Mexico when a balance has to be struck in a prosecution between enforcement of the criminal law and national security concerns or treaty obligations?  Are those not quintessential Executive Branch policy choices, and certainly not matters to be decided by a designee of the Judiciary?  What if, God forbid, scandal

or malfeasance struck the United States Attorney's Office for the District of New Mexico?  Who should voters, in the ultimate check and balance of our constitutional system, hold accountable - the judges who appointed him or a President who had nothing to do with it?  Finally, what if Mr. Fouratt does not toe a perceived judicial line?  28 U.S.C. 546(d) does not bar the District Court from replacing him with its next Judicial choice.

Rather, in this case, the appropriate test to determine whether the separation of powers has been violated by  28 U.S.C. 546(d) is the simple test offered by Justice Scalia in his dissent in *Morrison.*  Both prongs of Justice Scalia's *Morrison* test are met here.  First, the conduct of criminal prosecution is the exercise of purely executive power.  *See, Heckler*, 470 U.S. at 832 (1985).  Second, the statute deprives the President of the United States exclusive control over the exercise of that power.  Mr. Fouratt is ultimately accountable to the judiciary, not the President.

The constitutionality of 28 U.S.C. 546(d) should not turn on the characterization of whether a United States Attorney is a "superior" or "inferior" officer.  While other jurisdictions have held that a United States Attorney is an "inferior" officer and that the appointment of a United States Attorneys by the judiciary is not unconstitutional, *see United States v. Sotomayor-Vasquez*, 249 F.3d 1, 20 (1st Cir. 2001); *United States v. Hilario,* 218 F.3d 19, 21, 29 (1st Cir. 2000); *United States v. Gantt,* 179 F.3d 782, 788-789 (9th Cir. 1999); *United States v. Solomon*, 216 F.Supp. 835, 840-43 (S.D.N.Y. 1963).  The Tenth Circuit, however, has never addressed this issue.  Even if this Court finds that a United States Attorney is an "inferior" officer, which Mr. Wilson does not contest, the majority in *Morrison* anticipated and provided guidance on this issue by noting that, "We do not mean to say that Congress' power to provide for interbranch

appointment of 'inferior officers' is unlimited." Accordingly, the holding in *Morrison* should not

be recklessly expanded, and the inquiry cannot end upon that determination alone.

The power to prosecute, and ultimately the responsibility and accountability to ensure

that the Nation's laws are faithfully executed cannot be constitutionally delegated to a federal

court.  In this case, just who does Mr. Fouratt report to – the Court or the President?  The very

question vividly demonstrates the statute's unconstitutionality.  Because Mr. Wilson is being

prosecuted by an United States Attorney who has been unconstitutionally appointed, Mr. Wilson

requests that his current indictment be dismissed without prejudice.

Mr. Fouratt's appointment also violates the Appointments Clause.  The Appointments

Clause, Art II, § 2, cl. 2 reads as follows:

> [The President] shall nominate, and by and with the Advice and Consent of the
> Senate, shall appoint Ambassadors, other public Ministers and Consuls, judges of
> the supreme Court, and all other Officers of the United States, whose
> Appointments are not herein otherwise provided for, and which shall be
> established by Law: but the Congress may by Law vest the Appointment of such
> inferior Officers, as they think proper, in the President alone, in the Courts of
> Law, or in the Heads of Departments.

The Clause makes nomination and confirmation the requisite appointment protocol for what

have come to be known as "principal officers" of the United States by allowing Congress to

permit a limited class of officials to appoint "inferior officers" without the need for confirmation.

*See, Edmond v. United States*, 520 U.S. 651, 659-61, 117 S.Ct. 1573, 1579-1580 (1997).  The

Appointments Clause "is a bulwark against one branch aggrandizing its power at the expense of

another branch and preventing the diffusion of the appointment power." *Ryder v. United States,*

515 U.S. 177, 182, 115 S.Ct. 2031, 2035 (1995).  The Clause dictates that the President, with the

advice and consent of the Senate, possesses the sole authority to appoint "principal" officers of

the United States.  *See, Buckley*, 424 U.S. at 132, (per curiam); *United States v. Germaine,* 99

U.S. 508, 509, 25 L.Ed. 482 (1878).  On the other hand, Congress is empowered to authorize the

appointment of "inferior" officers "in the President alone, in the Courts of Law, or in the Heads

of Departments."  U.S. CONST. Art. II, § 2, cl. 2.

      Here, Mr. Wilson does not contest that the Office of the United States Attorney is an

inferior office.  Mr. Wilson does not take issue with 28 U.S.C. § 546(b) and the authority of the

Attorney General, a Presidentially appointed member of the Executive Branch, to appoint an

interim United States Attorney.  Instead, Mr. Wilson asserts that the Appointments Clause is

violated when a collage of Article III judges appoint the individual who has the responsibility to

ensure that the laws of the United States are faithfully executed, yet who will keep his job only if

he placates the very same supposedly neutral and detached judicial officers.

      FOR THE REASONS SET FORTH ABOVE, Mr. Wilson requests that the indictment be

dismissed without prejudice.

                Respectfully submitted,


                Electronically filed: 01/30/08
                Robert J. Gorence
                Gorence & Oliveros, P.C.
                Attorneys for Defendant Dennis Wilson
                201 12th Street NW
                Albuquerque, New Mexico  87102
                (505) 244-0214 fax(505)244-0888

      I hereby certify that a true and accurate copy of the foregoing pleading was emailed to
counsel of record by CM/ECF and mailed to all other counsel of record this 30th day of January,
2008.

Electronically filed: 01/30/08
Robert J. Gorence