IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number: CR 05 1849 JH |
| | ) | |
| DENNIS WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO THE UNITED STATES' RESPONSE TO MOTION TO DISMISS INDICTMENT ON THE BASIS THAT THE CURRENT UNITED STATES ATTORNEY HAS BEEN UNCONSTITUTIONALLY APPOINTED**

The Defendant by his attorney, Robert Gorence of Gorence & Oliveros, P.C., replies to the response of the United States as follows:

I. **The Process of Court Appointment of U.S. Attorneys is Incongruous with the Constitutional Function of the Judiciary**

As the government acknowledges in its Response, even if United States Attorneys are "inferior" officers under the Constitution, which other courts have held, the appointment of U.S. Attorneys by federal district judges is still invalid under the Appointments Clause if the appointment is: (1) incongruous with appropriate judicial activity, or (2) violates separation of powers principles. *Morrison v. Olson*, 487 U.S. 654, 675-76 (1988).[1] This incongruity inquiry seeks to determine whether "the appointment of the officers in question could, with any greater propriety, and . . . with equal regard to convenience, have been assigned to any other depositary of official power." See *Morrison*, 487 U.S. at 676; *see also In re Application of President's*

---

[1] Of course, if United States Attorneys are regarded as "principal" officers under the Constitution, then the only method for appointment is through nomination by the President and confirmation by the Senate. U.S. Const. art. II, 2, cl. 2; *Buckley v. Valeo*, 424 U.S. 1, 132 (1976).

1

*Comm'n on Organized Crime*, 763 F.2d 1191, 1196-97 (11th Cir. 1985) (judges could not sit on advisory panel investigating organized crime because imposition of powers interfered with their ability to perform their constitutionally delegated duties).

The Appointments Clause is designed to use the checks and balances of the constitutional structure to ensure a "higher quality of appointments." *Edmond v. United States*, 520 U.S. 651, 659 (1997). It "is a bulwark against one branch aggrandizing its power at the expense of another branch and preventing the diffusion of the appointment power." *Ryder v. United States*, 515 U.S. 177 (1995). The Appointments clause was also intended to establish definite responsibility amongst the branches in regards to the appointment process. Joseph P. Harris, The Advice and Consent of the Senate 376 (1953) ("If one principle in regard to appointments was prized above others by the Framers of the Constitution, it was that of establishing definite responsibility."). The Framers believed that accountability was critical. *See Freytag v. Commissioner*, 501 U.S. 868, 884 (1991). "The blame of a bad nomination would fall upon the President singly and absolutely. The censure of rejecting a good one would lie entirely at the door of the Senate. . . ." *Weiss v. United States*, 510 U.S. 163, 186 (1994) (Souter, J., concurring) (quoting The Federalist No. 77 (Alexander Hamilton)). "The framers anticipated that the President would be less vulnerable to interest-group pressure and personal favoritism than would a collective body. The sole and undivided responsibility of one man will naturally beget a livelier sense of duty, and a more exact regard to reputation." *Edmond* at 659, quoting the Federalist No. 76 (Alexander Hamilton).

Appointments that circumvent the structural safeguards of the Appointments Clause deprive "the public of any realistic ability to hold easily identifiable elected officials to account

for bad appointments." *Weiss*, 510 U.S. at 191 (Souter, J., concurring). "Judges, after all, have life tenure, and appointing a surefire enthusiastic prosecutor could hardly be considered an impeachable offense. So if there is anything wrong with the selection, there is effectively no one to blame." *Morrison*, 487 U.S. at 730 (Scalia, J., dissenting); see also Akhil Reed Amar, Intratextualism, 112 Harv. L. Rev. 747, 809 (1999) ("When an appointing authority is picking its own assistant, it obviously has strong incentives to pick well. If the subordinate does a bad job, other government officials and ordinary citizens will and should blame the boss.").

The appointment and removal of U.S. Attorneys are, at their core, political decisions. United States Attorneys serve at the pleasure of the President, who is himself a partisan elected official. The selection of U.S. Attorneys oftentimes may reflect the collective political judgments of what prosecutorial priorities should be within the Department of Justice or within a particular district. Decisions regarding U.S. Attorneys can cause tremendous dissension and political controversy as is evident from the national turmoil over the removal of U.S. Attorneys which precipitated the court appointment of Mr. Fouratt.

Against this backdrop, Court appointment of U.S. Attorneys is incongruous with the Court's function because it involves the Court in these political processes and thereby undermines judicial impartiality and the appearance of impartiality. "Impartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office." *In re President's Comm'n on Organized Crime*, 763 F.2d at 1197. "Judges who become too closely aligned with the interests of another branch cannot be expected to maintain their impartiality in adjudicating that other branch's interests, and the public at large may lose faith in the judiciary's independence." Harold J. Krent, Separating the Strands in Separation of Powers Controversies,

74 Va. L. Rev. 1253, 1302 n. 204 (1988). Even if the judges satisfy themselves that they could be completely impartial adjudicating cases brought by their appointed U.S. Attorney, criminal defendants that appear before the court could not be expected to have that same level of comfort. In a constitutional plan that stresses due process and fairness of the proceedings to the accused, even the appearance of partiality becomes very problematic, especially if that appearance persists over time and threatens to become part and parcel of the criminal justice system. The role of a federal judge is to be a neutral arbiter of the criminal case between the accused and the government. Their appointment of the chief prosecutor responsible for bringing the accused to court undermines the perception of judicial independence and the perception of impartiality.[2] This is especially incongruous given the power of the U.S. Attorney to set prosecutorial policy for the district: "the greater the policy-making power of the appointee . . . the more incongruous and improper it is for Congress to vest the appointment of that official in a court." Constance O'Keefe & Peter Safirstein, Note, Fallen Angels, Separation of Powers, and the Saturday Night Massacre: An Examination of the Practical, Constitutional, and Political Tensions in the Special Prosecutor Provisions of the Ethics in Government Act, 49 Brook. L. Rev. 113, 133 (1982). As the Court of Appeals for the First Circuit acknowledged in *United States v. Hilario*, 218 F.3d 19, 28 (1st Cir. 2000), "[s]ection 546(d) lacks some of the safeguards that courts have relied on in the past when they have determined that the impartiality of the Judicial Branch would not be affected by judges' performing interbranch assignments." For all these reasons – the appearance

---

[2] The government relies upon dicta in *Morrison* noting the court's power to make interim appointments of U.S. Attorneys and argues that the *Morrison* dicta "effectively forecloses" any incongruity argument. Response at 11. *Morrison* did not squarely address the issues before this Court or the same factual circumstances. Appointment of the U.S. Attorney for the district over which the judges serve is materially different than the circumstances present in *Morrison* with the appointment of an Independent Counsel by judges who would not oversee that prosecutor's actions. Mr. Wilson's Motion to Dismiss more fully analyzes and distinguishes these circumstances. The singular reference in *Morrison* to court appointments of U.S. Attorneys is therefore not controlling.

of partiality and involvement of the court in a traditional "political" process – appointments of U.S. Attorneys are uniquely incongruous with the Court's constitutional function.

There are also important unanswered questions in the plain language of § 546(d) which contravene the framers' intent to have definite responsibility for appointments. In its Response, the government argues that "nothing in the plain language of Section 546(d) grants district judges any power to infringe upon the President's prerogative and remove an interim United States Attorney after he is appointed." Response at 10. Neither does any language prevent it, however. Section 546 envisions the court-appointed prosecutor serving "until a presidentially appointed United States Attorney is qualified." That statute does **not** address the situation, however, where the office becomes vacant after the court-appointed U.S. Attorney leaves or is removed by the President before a presidentially nominated U.S. Attorney has been confirmed. At that point, which branch has the power to appoint? This "vacuum" in responsibility for appointments is completely contrary to the framers' intent to establish definite responsibility in the appointments process. Indeed, even the use of the term "may appoint" with respect to the court's authority in 546(d), undermines the definite structure of the Appointments Clause. All of these concerns highlight the incongruity and separation of powers problems inherent with the court appointment process.

> II.     **The Process of Court Appointment of U.S. Attorneys Violates Principles of Separation of Powers**

The separation of powers doctrine is "one of the basic foundations of the United States federalist system by which the "Constitution [seeks] to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). "The driving force behind separating and diffusing

governmental power is to secure liberty." *United States v. Vazquez*, 69 F. Supp. 286, 293 (D. Puerto Rico 1999) (quoting *Youngstown Sheet Tube & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). Within the criminal justice system, each branch has a constitutionally prescribed role and the separation of powers serves as a "self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Mistretta v. United States*, 488 U.S. 361, 381-82 (1989).

The government addresses the separation of powers inquiry under the two-part test from *Hilario*, beginning at page 13 of its Response. Mr. Wilson asserts that the *Hilario* test should not be adopted by this court. Instead, as Justice Scalia wrote in his *Morrison* dissert: "[i]t is ultimately irrelevant *how much* the statute reduces Presidential control…It is not for us to determine, and we have never presumed to determine, how much of the purely executive powers of government must be within the full control of the President. The Constitution prescribed that they *all* are." *Morrison* at 708-09. Here, section 546(d) diminishes Executive power, and Executive accountability, because the Executive's choice as to who will bear responsibility that federal law in New Mexico will be faithfully executed has been surplanted with a Judicial choice. As such, section 546(d) diminishes, to some degree, the Presidents power of exclusive control over a quintessential executive activity. That is the test Mr. Wilson suggests that the Court should adopt. If that is not the test, what would prohibit Congress from empowering district courts from appointing interim Secretaries of the Army, Navy, or Air Force in the event that there had not been Senate confirmation of a Presidential choice? As ludicrous as it sounds, why is the Executive's duty to enforce the law any more delegable than the Executive's duty to protect the country from enemies foreign or domestic? The test should not be one of degree or

how much. *Any* diminution of Executive power of a quintessential Executive function violates the Constitution.

Even if this court were to adopt the *Hilario* test, it should dismiss the indictment. Under the first prong, the inquiry is whether the vesting of power in the judiciary usurps the prerogatives of another branch resulting in an "unconstitutional accumulation of power" in the judiciary. *Hilario*, 218 F.3d at 27. In its analysis, the Response highlights points from *Hilario* which essentially say that, after the court appointment is made, the Executive Branch retains all the formal controls over the U.S. Attorney, including supervisory responsibility and the power to remove the nominee (President). Accordingly, the Response argues that there is no unconstitutional grant of power to the judiciary in the "limited power of appointment" granted in 546(d). Response at 13-14.

The government's analysis assumes that this country is a nation governed by men, not laws. While the Response attempts to limit the power conferred to the judiciary as a "limited grant," indeed it is not. The appointment power to the judicial branch in 546(d) is full in its scope and it confers all of the power of a presidentially appointed United States Attorney upon the individual selected. That power installs the chief federal prosecutor within a district, with the ability to set local political prosecution priorities, to allocate resources to individual cases, to institute criminal proceedings against citizens within the district and to institute certain prosecution programs. The government states that "Section 546(d) is a single thread of a statutory fabric clothing the executive with the resources to prosecute offenses against the laws of the United States." Response at 14. But why does a judicially appointed U.S. Attorney have to follow the U.S. Attorney's Manual, or even a directive of the Attorney General. If fired by the

Attorney General, why couldn't the district court simply re-appoint him or appoint a similarly like-minded individual? Must we wait for a constitutional impasse in order for the separation of powers violation to be made more concrete. For example, if a member of the federal judiciary is the target of an investigation, as has historically happened, what stops the district court from simply "discharging" and "reappointing" any court appointed U.S. Attorney who had the audacity to investigate one of its members? As asserted in the brief in chief, section 546(d) does not prohibit a district court from replacing one judicially selected U.S. Attorney with another. Even under the first prong of the *Hilario* test, section 546(d) fails.

Under the second prong of the *Hilario* test, the government's argument is essentially that the Court must step in if there is political gridlock to ensure that the United States skillfully processes cases and that the court similarly appoints defense counsel for indigent defendants. Response at 16 (quoting *Hilario*, 218 F.3d at 29). This is wrong on a number of levels. First, there is no constitutional mandate that the court make sure that the United States skillfully process cases, but there is a constitutional mandate that an indigent accused be represented. Second, principles of convenience should not trump the constitutional principles of separation of powers: "convenience and efficiency are not the primary objectives – or the hallmarks – of democratic government." *INS v. Chadha*, 462 U.S. 919, 944 (1983). Instead, the framers sought in the Appointments Clause to force the more political branches – the legislative and the Executive – to engage in the political process, to vigorously debate candidates for appointment and to ultimately resolve any disputes in an open, public manner.

Allowing the more political branches an "easy out" creates another danger in the courts becoming enmeshed in a political power struggle between the President and Congress. If the

President decides that he is better off avoiding a political showdown over a U.S. Attorney nominee with Congress, he can seek political cover through the court's appointment process. Likewise, Congress can simply refuse to confirm any of the President's selections, thereby forcing the process upon the Attorney General and then the courts under the statute. Yet, because the court process operates in virtual secrecy, the public cannot be aware of, participate, or comment on the selection process, credentials or other criteria for the prospective nominee. There is no process for the citizenry to express displeasure with a court appointment, such as there is with Congress or the President through the ballot. For all these reasons, the process of court appointment of U.S. Attorneys violates core separation of powers principles.

### III.     Section 546(d) is Constitutionally Infirm As Applied to this Case

Mr. Wilson addressed the "as applied" challenge in his motion to dismiss. It is also important to point out that the government is wrong that the Assistant U.S. Attorneys operate in a vacuum separate and apart from the appointed United States Attorney. Every significant decision within the United States Attorney's office is approved by the United States Attorney and his management team, according to the United States Attorney's supervisory structure. Thus, the United States Attorney controls decisions whether to institute prosecutions, whether and under what terms to plead a case, and other important decisions which affect citizens' liberty. The concern about incongruity applies to each of those decisions as does the concern about the appearance of impartiality. Although there was already an indictment in place at the time of this United States Attorney's appointment, important decisions regarding the case, including whether to offer a plea or whether to dismiss the case, or whether to seek a superseding

indictment will all be decided under the supervision of the new United States Attorney. Mr. Wilson asserts that as applied to him, section 546(d) is unconstitutional.

                                    Respectfully submitted,

                                    Electronically filed: 02/20/08
                                    Robert J. Gorence
                                    Gorence & Oliveros, P.C.
                                    Attorneys for Defendant Dennis Wilson
                                    201 12th Street NW
                                    Albuquerque, New Mexico 87102
                                    (505) 244-0214 fax(505)244-0888

      I hereby certify that a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF and mailed to all other counsel of record this 20th day of February, 2008.

Electronically filed: 02/20/08
Robert J. Gorence