**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Cr. No. 05-1849 JH**

**DENNIS WILSON,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

This matter comes before the Court on Defendant Dennis Wilson's *Motion to Dismiss Indictment Without Prejudice on the Basis That the Current United States Attorney Has Been Unconstitutionally Appointed* [Doc. No. 1207]. Having reviewed the briefs of counsel and additional legal authority, the Court finds that the Motion is without merit and should be denied.

**BACKGROUND FACTS**

On August 23, 2005, the United States filed the original indictment in this case [Doc. No. 1] charging 21 defendants with, *inter alia*, conspiracy to distribute 1000 kilograms or more of marijuana, operating a continuing criminal enterprise, and money laundering. That indictment, which did not name Defendant Dennis Wilson ("Wilson") but did name Defendants Greg Hill ("Hill") and Bill Jones ("Jones"), was signed by then United States Attorney David C. Iglesias. On April 25, 2006, the Government filed a superseding indictment, again signed by Mr. Iglesias, which did name Wilson, along with Hill and Jones, as defendants.

Mr. Iglesias resigned his position effective February 28, 2007. Upon Mr. Iglesias' resignation, First Assistant United States Attorney Larry Gomez became Acting United States Attorney under the Vacancies Reform Act, 5 U.S.C. § 3345(a)(1). On September 26, 2007, Acting

Attorney General Peter Keisler appointed Mr. Gomez as United States Attorney pursuant to 28 U.S.C. § 546(c)(2). This temporary appointment expired 120 days later, and on January 25, 2008, this Court appointed Gregory J. Fouratt as United States Attorney in accordance with 28 U.S.C. § 546(d), which provides:

> (d) If an appointment expires under subsection (c)(2) of this section, the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

## DISCUSSION

Wilson (joined by Hill and Jones)[1] moves the Court to dismiss the indictment against him "on the basis that the prosecution is being pursued by a United States Attorney who has been unconstitutionally appointed." Doc. No. 1207 at p. 1. Wilson contends "that 28 U.S.C. § 546(d), on its face, and as applied in this case, violates the separation of powers and is patently unconstitutional." *Id.* at p. 4. According to Wilson, under the separation of powers doctrine only the Executive has the power to appoint a United States Attorney. He also argues that by exercising their power under 28 U.S.C. § 546(d), the judges of this judicial district somehow transformed themselves into Mr. Fouratt's "bosses" such that his appointment violates the Appointments Clause, and it would be improper for those judges to hear cases litigated by Mr. Fouratt or by Assistant United States Attorneys under his supervision. The Court finds neither argument persuasive.

### I. SECTION 546(d) IS CONSTITUTIONAL

Wilson argues that "[s]ince there is not a constitutionally appointed United States Attorney

---

[1] Defendant Dana Jarvis did not join in the motion. Thus, the Court concludes that this decision is not prohibited by the stay resulting from Jarvis' interlocutory appeal, filed March 7, 2008.

whose authority flows from the Executive Branch of government, the continued prosecution of Mr. Wilson is constitutionally impermissible and this case must be dismissed without prejudice until a constitutionally valid United States Attorney is appointed." Doc. No. 1207 at p. 2. Wilson's position is without merit.

**A. Section 546(d) Does Not Conflict With Either the Constitutional Principles Embraced by the Framers or With Historical Practice**

Contrary to what Wilson argues, the draftsmen of the Constitution did not perceive the three branches of government as entirely separate with mutually exclusive powers. In *United States v. Gregory Rose*, Cr. No. 07-2145 BB (Mem. Op. Feb. 29, 2008) (Doc. No. 62, unpublished), United States District Judge Bruce Black conducted a thorough analysis of the history of the role of the prosecutor in this country from the colonial period through modern times. That history demonstrates not only that the draftsmen of the Constitution did not perceive the three branches of government as completely separate with mutually exclusive powers, but also that federal courts have long held, to some degree, the power of appointment of federal prosecutors. For example, in 1863 Congress authorized the federal circuit courts to fill a vacancy in the office of United States Attorney. *See* An Act to Give Greater Efficiency to the Judicial System of the United States, 12 Stat. 768 (Mar. 3, 1863) ("In case of a vacancy in the office of marshal or district attorney in any circuit, the judge of such circuit may fill such vacancy, and the person so appointed shall serve until an appointment shall be made by the President . . ."). Thirty five years later, Congress transferred that power of appointment to the district courts, whose judges were more readily accessible. *See* H.R. Rep. No. 1317, 55th Cong., 2d Sess. 1 (1898). That power has resided with the district courts ever since, with

the exception of a brief hiatus in 2006.[2] The Court is persuaded by Judge Black's analysis and adopts it herein, concluding that the Court's limited power of appointment of United States Attorneys under 28 U.S.C. § 546(d) is not inconsistent with any constitutional principles embraced by the Founding Fathers, nor is it inconsistent with historical practice in this country.

**B. The Court's Appointment of the United States Attorney Does Not Violate the Separation of Powers Doctrine**

Congress has generally vested the appointment of United States Attorneys in the President of the United States, with the advice and consent of the Senate. 28 U.S.C. § 541(a). In the event a United States Attorney's position becomes vacant, Congress has divided the responsibility for making an interim appointment between the Attorney General and the district courts. Under 28 U.S.C. § 546, the Attorney General may appoint a United States Attorney for a district in which the office of the United States Attorney is vacant for 120 days. After that appointment expires, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). The district court has the authority to appoint a prosecutor only where, as here, the Executive fails to do so. *In re Farrow*, 3 F. 112, 116 (C.C.N.D. Ga. 1880) (predecessor statute authorizing judicial appointment of interim United States Attorney "was not to enable the circuit justice to oust the power of the President to appoint, but to authorize him to fill the vacancy until the President should act, and no longer").

An appointment under Section 546(d) confers upon the appointee all the powers of a United States Attorney. *See In re Doyle*, 839 F.2d 865, 866 (1st Cir. 1988); *see also In re Grand Jury*

[2] That year, Congress struck the 120-day limitation of Section 546(c)(2) and eliminated Section 546(d) entirely. USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 246. However, in 2007 Congress reversed itself, restoring both provisions. *See* Preserving United States Attorney Independence Act of 2007, P.L. 110-34 (June 14, 2007).

*Proceedings*, 673 F. Supp. 1138, 1142 (D. Mass. 1987) (appointment under Section 546(d) results in an "actual, fully empowered United States Attorney."). However, nothing in Section 546(d) grants the district court any power to infringe upon the President's prerogative to remove an interim United States Attorney after he is appointed. Rather, the power to remove a United States Attorney rests exclusively with the President, who may exercise that power for any reason. 28 U.S.C. § 541(c); *see also Parsons v. United States*, 167 U.S. 324 (1897). An interim United States Attorney must relinquish the position when a Presidential appointee becomes qualified, either through the nomination and confirmation process or through a recess appointment. Likewise, nothing in Section 546(d) confers upon district judges any supervisory power over an interim United States Attorney after his appointment. Rather, these controls remain in the Executive Branch, where they have resided for more than a century.

The Supreme Court has addressed similar issues of delegation of certain powers to the judicial branch, finding no separation of powers violation. For example, in *Morrison v. Olson*, 487 U.S. 654 (1988), former government officials brought suit challenging the authority of independent counsel appointed under provisions of the Ethics and Government Act. The Supreme Court held that the judiciary's power of appointment of the independent counsel was constitutional and did not violate the separation of powers doctrine. Indeed, the *Morrison* court discerned no "inherent incongruity about a court having the power to appoint prosecutorial officers," 487 U.S. at 676, adding that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors." *Id*. at 676 n. 13. The court also emphasized the fact that the appointing judges lacked supervisory authority over the independent counsel. *Id*. at 681. Finally, in *Morrison* the Supreme Court indicated in straightforward terms that having judges appoint prosecutors will not, in and of itself, impugn the judiciary's institutional

integrity. Indeed, the *Morrison* court used the example of judicial appointment of interim United States Attorneys to illustrate that the task is not incompatible with judicial functions. *Id*. at 676-77. In a related vein, the Supreme Court also noted "the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation ... notwithstanding the possibility that the appointed attorney may appear in court before the judge who appointed him." *Id*. at 677 n. 14.

Similarly, in *Mistretta v. United States*, 488 U.S. 361 (1989), the petitioner challenged the constitutionality of the Guidelines promulgated by the United States Sentencing Commission, a body composed of both judges and non-judges. Mistretta, who was under indictment on three counts centering in a cocaine sale, argued that the Commission was constituted in violation of the separation of powers principle, and that Congress had delegated excessive authority to the Commission to structure the Guidelines. In holding the Sentencing Guidelines to be constitutional, the Supreme Court concluded that Congress neither delegated excessive legislative power to the Commission nor violated the separation of powers principle by placing the Commission in the Judicial Branch. The Court observed, "[w]e [] have recognized, however, that the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches." 488 U.S. at 372. The Court also concluded that the placement within the judiciary of an independent agency charged with the promulgation of sentencing guidelines could not be construed as preventing the Judicial Branch "from accomplishing its constitutionally assigned functions." *Id*. at 395-96 (quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977)). The Court noted that sentencing is a field in which the judiciary had long exercised substantive or political judgment, pointing out that Congress placed the Sentencing Commission in the Judicial Branch precisely because of the its special knowledge and

expertise.

Both *Morrison* and *Mistretta* support the conclusion that Section 546(d) does not violate the separation of powers doctrine. The Court agrees with the First Circuit's analysis of this issue in *United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000), in which the court examined the same arguments raised by Wilson in this case. Relying upon in *Morrison* and *Mistretta*, the court concluded that "the judicial appointment of interim United States Attorneys does not impermissibly encroach on executive powers" and that "our system of government rests on the assumption that officers can be independent of their appointers." *Id*. at 27. The First Circuit reasoned:

> [T]he power to appoint is tempered in ways that ensure the appointee's independence. In this regard, we deem it especially significant that section 546(d) neither grants the judges of the district court authority to supervise or remove an interim United States Attorney whom they have appointed nor gives them power to determine (or even influence) how the appointee will enforce the laws. *Cf. Morrison*, 487 U.S. at 681, 108 S.Ct. 2597 (emphasizing appointing judges' lack of supervisory authority). Under those circumstances, it is unreasonable to think that merely making an interim appointment impermissibly entangles judges in the functioning of the Executive Branch.

*Id*. Relying upon *Morrison*, the court observed that the federal courts have long had the power to appoint criminal defense attorneys for those unable to afford representation, even though those same attorneys often appear before the appointing court—a task that is not incompatible with judicial functions. *Id*. at 28 (citing *Morrison*, 487 U.S. at 677 n. 14). The same is true of the appointment of a prosecutor. The Court concluded that "we do not believe that section 546(d), by giving courts the option of naming an interim United States Attorney to avoid a vacancy, undermines public confidence in the disinterestedness of the Judicial Branch." *Id*. at 29.

Wilson cites no authority to the contrary, nor does he distinguish the judiciary's power of appointment of counsel for the indigent. He utterly fails to explain how it can be improper for the

Judicial Branch to hold one power of appointment and not the other. Instead, Wilson relies in large part on Justice Scalia's dissent in *Morrison v. Olson*, 487 U.S. at 710. However, this Court is bound to follow the applicable precedent of the Supreme Court, *United States v. Hatter*, 532 U.S. 557, 567 (2001); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), including the majority opinion in *Morrison*. Therefore, the Court declines Wilson's invitation to ignore that precedent in favor of a dissent expressed by a lone justice.

In light of the foregoing, the Court concludes that its exercise of its statutory power to appoint an interim United States Attorney does not violate the separation of powers doctrine.

**C. The Court's Appointment of the United States Attorney Does Not Violate the Appointments Clause of the Constitution**

The Appointments Clause of the Constitution states that the President, with the advice and consent of the Senate, nominates ambassadors, Supreme Court justices, "other public Ministers and Counsels," and others, but that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., Art. II,§ 2, cl. 2. Wilson does not contest the fact that United States Attorneys are "inferior" officers within the meaning of this clause. Instead, he argues that the appointment is improper under the Supreme Court's decision in *Morrison v. Olson*, 487 U.S. 654, 675-76 (1988), in which the Court stated that Congress may not use the Appointments Clause to vest the appointment power of an "inferior" officer in a branch which results in some "incongruity" between the functions normally performed by the courts and the performance of their duty to appoint.[3] In his reply brief [Doc. No. 1224 at pp. 3-5], Wilson argues that the Court's appointment

[3] The *Morrison* court also stated that an appointment that violated the separation of powers doctrine would be inappropriate. The Court addressed that argument in Part I.B., *supra*.

of the United States Attorney is incongruent with the Court's function because it involves the Court in the political process, thereby undermining judicial impartiality and the appearance of impartiality. However, Wilson ignores the fact that the Court lacks any power to either supervise or remove the United States Attorney once appointed. Once in office, the United States Attorney has all the independence, powers and authority of his office and owes no duty or obedience to the appointing court beyond the obligations of professionalism and candor to the court owed by any other attorney. Rather, it is well settled that United States Attorneys fall under the supervision and control of the United States Attorney General. *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 278-79 (1888); *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000). Wilson dangles the specter of a United States Attorney who is effectively a marionette under the manipulation of the appointing court; however, the reality is that the court has no power to control a United States Attorney. Nothing in the plain language of Section 546(d), or any other statute or common law, grants the court such authority. In addition, a President is free to name his own United States Attorney at any time, subject to Senate confirmation, or through his power to make recess appointments. The full measure of control and concomitant accountability remain with the Executive Branch.

Further undermining Wilson's argument is the *Morrison* decision, in which the Supreme Court stated that there is no "inherent incongruity about a court having the power to appoint prosecutorial officers," citing with approval lower court decisions upholding interim appointments of United States Attorneys. 487 U.S. at 676. Speaking for the Court, Chief Justice Rehnquist observed:

> [F]ederal courts and judges have long performed a variety of functions that, like the functions involved here, do not necessarily or directly involve adversarial proceedings within a trial or appellate court. For example, federal courts have traditionally supervised grand juries and assisted in their "investigative function" by, if

> necessary, compelling the testimony of witnesses. Federal courts also participate in the issuance of search warrants, and review applications for wiretaps, both of which may require a court to consider the nature and scope of criminal investigations on the basis of evidence or affidavits submitted in an ex parte proceeding. In *Young v. United States ex rel. Vuitton et Fils S.A.*, we recognized that federal courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, and this authority necessarily includes the ability to appoint a private attorney to prosecute the contempt.

487 U.S. at 681 n. 20 (internal citations omitted). The majority in *Morrison*, with only Justice Scalia dissenting, sustained the judicial appointment of the independent counsel against a challenge virtually identical to the one raised by Wilson in this case. Indeed, the majority added that "in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors." *Id*. at 676 n. 13, 108 S.Ct. 2597.

Various federal circuit and district courts have rejected the arguments that Wilson makes here. In *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), the defendant argued that a certification under 18 U.S.C. § 3731 was invalid because the current United States Attorney for the Southern District of California was appointed by the judges of that district pursuant to 28 U.S.C. § 546(d). Following *Morrison*, the Ninth Circuit held that such a judicial appointment does not violate the Appointments Clause because United States Attorneys are "inferior officers." *Id*. at 998-99. The Ninth Circuit followed *Gantt* in *United States v. Whitehead*, 200 F.3d 634, 641 (9th Cir. 2000), again rejecting the defendant's argument that the district court lacked jurisdiction over his case because the United States Attorney was appointed by the district judges for the Southern District of California. *See also United States v. Hilario*, 218 F.3d 19, 21 (1st Cir. 2000) (finding that United States Attorneys are inferior officer and rejecting arguments raised by Wilson in this case); *United States v. Sotomayor Vazquez*, 69 F.Supp.2d 286 (D.P.R. 1999) (same); *United States v. Solomon*,

216 F.Supp. 835 (S.D.N.Y. 1963).

Thus, the Court finds no violation of the Appointments Clause.

## II. DEFENDANT HAS FAILED TO SHOW THAT DISMISSAL OF THE INDICTMENT IS AN APPROPRIATE REMEDY

Finally, Wilson offers no explanation as to why the appointment of the United States Attorney justifies dismissal of the indictment. Indeed, Wilson has provided no meaningful legal discussion as to why he should be entitled to any remedy at all, even if the United States Attorney's appointment were invalid. Wilson has also failed to provide any showing as to how the alleged unconstitutionality of the statute would require his indictment be dismissed.

As a matter of law, the constitutionality of an appointment under Section 546(d) has no bearing upon the validity of Wilson's indictment. Even if Mr. Fouratt's appointment were invalid, which it is not, "[a]n appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute." *United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001). "The constitutionality of Section 546(d) would not affect the validity of indictments ... as indictments need only be signed by 'an attorney for the government.'" *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999); *see also United States v. Kouri-Perez*, 47 F. Supp. 2d 164, 166 (D.P.R. 1999); Fed. R. Crim. P. 7(c)(1) and 54(c). Thus, there is no basis for dismissal of the indictment in this case.

In light of the foregoing,

**IT IS THEREFORE ORDERED** that Wilson's *Motion to Dismiss Indictment Without Prejudice on the Basis That the Current United States Attorney Has Been Unconstitutionally Appointed* [Doc. No. 1207] is **DENIED**.

**UNITED STATES DISTRICT COURT**