IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.                                                                       Cr. No. 05-1849 JH

**DAVID REID, GREG HILL and
GEORGE OSGOOD,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court pursuant to the amended, unopposed motion filed by Defendant Greg Hill to determine the admissibility of co-conspirator statements [Doc. No. 735] and Defendant Dennis Wilson's motion to exclude the admissibility of co-conspirator statements [Doc. No. 725].[1]  On April 1, 2009, the Court held an evidentiary hearing to determine the admissibility of co-conspirator statements at which the United States was represented by James Braun and Stephen Kotz.  Defendant David Reid waived his appearance and was represented by Walter B. Nash.  Defendants Greg Hill and George Osgood were both present and were represented by Billy Blackburn and Amy Sirignano, respectively.[2]

---

[1] Defendants David Reid and George Osgood have implicitly joined in the motions, though the Court finds no written record of such joinder on the voluminous docket sheet for this case.

[2] At the start of the hearing Robert Gorence, counsel for Defendant Dennis Wilson, informed the Court of Mr. Wilson's intent to resolve the charges against him through a plea. Therefore, Mr. Gorence withdrew Mr. Wilson's motion and asked to be excused from the James hearing, and the Court granted his request.

**DISCUSSION**

**I.    REQUIREMENTS FOR ADMISSION OF CO-CONSPIRATOR STATEMENTS**

The Federal Rules of Evidence provide that a statement is not hearsay if it is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "Before admitting evidence under this rule, [t]he court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (quotations omitted). In determining whether a conspiracy existed, the district court may hold a separate "*James*" hearing, *see generally, United States v. James*, 590 F.2d 575, 579-80 (5th Cir. 1979), *partially overruled by Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987), outside of the presence of the jury, or it may provisionally allow in the evidence with the understanding that the offering party will present evidence during the course of trial that will prove the existence of the predicate conspiracy. *Owens*, 70 F.3d at 1123.

The burden of proof rests upon the government as the party offering the co-conspirator statements. That burden is one of "substantial independent evidence," which means more than a scintilla, and is "such evidence as a reasonable mind would accept as adequate to support a conclusion. Substantial evidence is less than the weight of the evidence." *United States v. Petersen*, 611 F.2d 1313, 1330 n. 1 (10th Cir. 1979).

At the hearing the parties agreed to a procedure whereby DEA Special Agent Rich Stark would provide summary testimony to establish that a conspiracy did exist and that the Defendants were members of the conspiracy. Special Agent Stark is the case agent assigned to investigate the

2

Dana Jarvis drug trafficking organization and has had that role since 2002.

## II.     EVIDENCE ADMITTED AT THE HEARING

### A.     David Reid

David Reid is an airplane pilot who has admitted that he flew for Dana Jarvis but contends that he did not know that he was transporting bulk marijuana or cash proceeds from the sale of marijuana.

Special Agent Stark testified regarding statements by cooperating co-defendant Ayla Jarvis, daughter of Dana Jarvis, the head of the drug conspiracy. Ayla Jarvis has pled guilty to her participation in the conspiracy and intends to testify at trial. According to Stark, Ayla Jarvis identified her role in the conspiracy as one of running "lots of little errands" for her father, stripping and weighing marijuana and preparing it for transport, and transporting bulk cash. Former co-defendant Mike Hannah's role was holding bulk U.S. currency for Dana Jarvis and then distributing it to drug suppliers and others at Jarvis' sole direction.

Stark testified that on October 28, 2004, authorities seized $287,000 in cash from Ayla Jarvis in Bloomington, Indiana. Ayla Jarvis had flown to Bloomington from Tucson, Arizona via Oklahoma City, Oklahoma in a private plane piloted by David Reid. Upon her arrival in Bloomington, Ayla Jarvis met with Greg Hill a restaurant. A short time later, she walked out of the restaurant with Hill. After she drove away, law enforcement officers pulled Ayla Jarvis over for a traffic infraction and discovered the large sum of currency in her car. She told them that the money belonged to her father and that he intended to use it to purchase an aircraft. The police seized the money. According to Ayla Jarvis, after the seizure she told Reid what had happened. Reid called her father and asked, "This doesn't have anything to do with drugs, does it?" Dana Jarvis assured

him that it did not. Reid then called the local law enforcement officer who had seized the money from Ayla Jarvis' car and claimed that the money was his and that he intended to use it to purchase an aircraft. The officer insisted that the money had been seized and that Ayla Jarvis had received a receipt. The following day Reid called the officer again and offered him $25,000 for a trooper fund if he returned the remainder of the money to Reid.

According to Ayla Jarvis, several months later Reid delivered approximately $80,000 to her in Tucson in a duffel bag that smelled strongly of marijuana, saying words to the effect, "If your bag smelled anything like this bag, no wonder it was seized."

Also, Stark testified credibly regarding Salvador Abeyta, who like Ayla Jarvis has pled guilty to participating in the Jarvis drug conspiracy and has agreed to testify at trial. Abeyta would testify that in the summer of 2005, he met with Dana Jarvis in Tucson, Arizona, drove him around to do errands, and went to the "Lazy B stash house/trailer," where two others were packing suitcases with marijuana. They loaded the suitcases into Abeyta's car and he drove to the airport, where the suitcases were loaded onto a plane flown by Reid. Abeyta said that Reid was very nervous and concerned that someone may have followed Abeyta to the airport.

Sam Jones, another cooperating defendant witness who pled guilty, has said that he packaged the marijuana into suitcases, which were then transported to a Tucson airport in Abeyta's vehicle. Jones helped load the suitcases aboard the plane, which was flown to Albuquerque. Jones asked Dana Jarvis why the marijuana was packaged in suitcases for air travel, as opposed to the duffel bags that they used for transporting the marijuana by vehicle. Jarvis said "we have a request" that the marijuana transported on the airplane be placed into suitcases instead of duffel bags. Jones inferred that the request was from the pilot, David Reid.

### B.    Greg Hill

Defendant Greg Hill lives in Bloomington, Indiana.  Agent Stark testified that after local police seized money from her in Bloomington, Indiana in October of 2004, Ayla said that she had gotten the money from "Greg."

Donald Trujillo has pled guilty to participating in Dana Jarvis' drug conspiracy, and he has agreed to testify in this case.  Trujillo has said that he transported both bulk marijuana and currency for the Jarvis organization beginning in approximately 2002.  Local police in Omaha, Nebraska performed a traffic stop on Trujillo on May 20, 2005, and discovered approximately 200 pounds of marijuana in his vehicle packaged in duffel bags inside a box.  According to Trujillo, he was taking that marijuana to Hill.  Trujillo would testify that he had taken several multi-hundred pound loads of marijuana to Hill's home in Bloomington, Indiana, and that Hill was known as "Oso" or "Ocho" or "the Masseuse."  Also, Stark testified that law enforcement intercepted a phone call in May of 2005 between Hill and Dana Jarvis in which Hill asked, "how is our friend Donald" and indicated his concern because Donald did not show up for an arranged meeting.[3]

Eventually, law enforcement officers searched Hill's home, where they found $40,000 in bulk cash, along with duffel bags, ten pounds of bulk marijuana, scales, baggies, and heat sealers, equipment commonly used in drug distribution.

Another defendant cooperating witness, Geno Berthod ("Old Man"), also stated that he transported marijuana to Hill.

### C.    George Osgood

---

[3] Donald Trujillo also said that he met David Reid at an airfield outside of Tucson and was handed bulk U.S. currency to take to Dana Jarvis.

Agent Stark testified that Donald Trujillo would testify that between 2002 and 2005, he picked up one hundred pounds of marijuana from Osgood in New York and drove with it on a circuitous route through Columbus, Ohio and that the drugs wound up in Chicago, Illinois. Cooperating witness J.D. La Monte lives in New York and will testify that since 2000 or 2001, he transported marijuana at Osgood's request. LaMonte also inventoried and stored bulk marijuana for Osgood. Rafal Mistrzak (another cooperating witness who has pled guilty to his role in the Jarvis drug organization) transported bulk U.S. currency for Dana Jarvis from different distribution sites, and Osgood directed LaMonte to meet with Mistrzak and hand over proceeds of drug distribution on the east coast of the United States. Ayla Jarvis said she delivered one hundred pounds of marijuana to Osgood in Pennsylvania and placed it in the trunk of his car.

Stark also testified that law enforcement officers have intercepted calls between Osgood and Dana Jarvis. In one such conversation, Osgood said that he had "30 papers," code for $30,000, for Jarvis.

## **CONCLUSION**

After reviewing the evidence presented the hearing, the Court finds that the government has met its burden to show by substantial independent evidence that a conspiracy to distribute illegal drugs existed among Dana Jarvis and many others, and that each of the declarants mentioned above was a member of the conspiracy. The Court further concludes that the United States has met its burden to show by substantial independent evidence that each of the Defendants—David Reid, Greg Hill, and George Osgood—was a member of the conspiracy. By stipulation of the parties, the Court leaves for another day the third element of the test laid out by the Tenth Circuit in *Owens*, that is, the question of whether any specific co-conspirator statement was made in the course of and in

furtherance of the conspiracy and is therefore admissible at trial.

                                                                                                                                 _____
                                                                                                                               **UNITED STATES DISTRICT JUDGE**